766 So.2d 9 (2000)
Janis Theresia HOGGATT, Appellant,
v.
William Lance HOGGATT, Appellee.
No. 1998-CA-01319-COA.
Court of Appeals of Mississippi.
May 9, 2000.
Rehearing Denied September 5, 2000.
*10 Gary L. Roberts, Attorney for Appellant.
Arthur D. Carlisle, Ocean Springs, Attorney for Appellee.
En Banc.
SOUTHWICK, P.J., for the Court:
¶ 1. Theresia and Lance Hoggatt agreed to a divorce based on irreconcilable differences. Mrs. Hoggatt appeals the chancellor's decision to award rehabilitative alimony instead of periodic alimony, and also complains that she should have received attorney's fees. We disagree and affirm.

FACTS
¶ 2. Janis Theresia Hoggatt and William Lance Hoggatt were married on August 9, 1980, and divorced on grounds of irreconcilable differences on August 7, 1998. Mr. Hoggatt, a minister, received his master's and doctoral degrees in Texas. Both he and Mrs. Hoggatt graduated from the University of Southern Mississippi. The couple adopted two children, ages seven and ten at the time of this suit. Mrs. Hoggatt elected to stay home to raise the children. For the last few years of the marriage, the family lived in church parsonages. Reverend Hoggatt's income was the family's sole support. After the divorce, Mrs. Hoggatt and the two children moved in with her parents.

DISCUSSION

I. Periodic Rehabilitative Alimony
¶ 3. Alimony awards are largely discretionary. A chancellor's decision regarding the amount and type of alimony will be upheld on appeal unless the decision is found to be manifestly in error either in fact or law, or otherwise an abuse of the discretion. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 4. There are three different categories of alimonyperiodic, rehabilitative, and lump sum. Hubbard v. Hubbard, 656 So.2d 124, 129-30 (Miss.1995). Each serves a somewhat different purpose. Rehabilitative period alimony is "an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim." Id. It is subject to modification and has a time limit set by the court. Id. Periodic alimony does not have a termination date and continues until the death of either spouse, the remarriage of the recipient, or *11 further order of the court based on a change in circumstances. Id. Lump sum alimony does not concern us in this case. Mrs. Hoggatt argues that the rehabilitative alimony that she is to receive will not adequately provide for her needs.
¶ 5. The chancellor considered the following factors that apply to making alimony determinations:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong, 618 So.2d at 1280.
¶ 6. The chancellor made a detailed decision that mentioned the following considerations. At the time of her divorce, Mrs. Hoggatt held a bachelor's degree from the University of Southern Mississippi. Her prior employment had been as a police officer, a position to which she did not wish to return.[1] Instead, she desires to complete work at Mississippi College to become a teacher, a process which she estimated would take 30 months. The award of rehabilitative periodic alimony extends six months beyond the period of time Mrs. Hoggatt plans to be in school.
¶ 7. The Reverend Hoggatt had received about $41,000 per year as a civilian pastor and would now receive $37,000 in his new assignment as a military chaplain. His former wife's attorney calls this change of careers a whim. Though this was an irreconcilable difference divorce, which leaves issues of fault largely unaddressed in the proceedings, the evidence indicates that Mrs. Hoggatt's reluctance to stay with her husband as he embarked on a military career was the final factor leading to divorce proceedings. It would be a matter of additional evidence and some debate before any conclusion could be reached as to which party better fits the image of abandoning this marriage.
¶ 8. The chancellor decided that Mrs. Hoggatt, after completing the time period that she testified would be required, could reenter the workforce with reasonable prospects for providing for herself. Neither party will be making a large income, but both could be seen based on this evidence as capable of reaching a comfortable lifestyle. No complaint is made here regarding the child support that was ordered, and therefore those additional payments are an obligation until the two children become adults. Chaplain Hoggatt also was to maintain life insurance with his children as beneficiaries, to keep the children covered by his own health insurance, and to pay all emergency medical expenditures that arose during the course of the divorce proceedings.
¶ 9. Not only the amount, but the category of alimony is initially the chancellor's *12 decision. Parsons v. Parsons, 678 So.2d 701, 703 (Miss.1996). It is important that this decision be subject only to an abuse of discretion review. The chancellor must analyze an overall combination of the listed factors, likely not highlighting a single category such as length of marriage, prior standard of living, or ability to pay. We find that the chancellor was within the margin of discretion when he concluded that the two spouses' education will enable them to maintain equivalent standards of living once the rehabilitation period is passed. The award of $450 in rehabilitative periodic alimony for thirty-six months was not an abuse of discretion.

II. Attorneys' Fees
¶ 10. If a party is financially able to pay his or her own attorney in a domestic case, then it is inappropriate to require the other party to make the payment instead. Benson v. Benson, 608 So.2d 709, 712 (Miss.1992). This too is discretionary with the chancellor and will be upheld unless we find that the discretion was abused. Armstrong, 618 So.2d at 1282.
¶ 11. The chancellor determined that each party would be responsible to pay that party's own attorney. Neither former spouse had much money on hand. Chaplain Hoggatt had $1,625 in checking accounts, Mrs. Hoggatt only $580, most of the latter perhaps being a then-recent alimony payment. Doubtless, Mrs. Hoggatt could have difficulty paying her attorney's fees, but it is also clear that Chaplain Hoggatt had little disposable income, given the alimony and child support that he was paying. Taking the parties as he found them, with neither having meaningful excess funds with which to pay fees, the chancellor left them to pay their own attorneys. That was reasonable.
¶ 12. We may not always agree that a chancellor decided the issues in a manner that we would have. However, our limitation as an appellate court is to determine whether the decisions were within the range of discretion permitted by the evidence and the applicable law. We find that they were.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., BRIDGES, LEE, MOORE, AND THOMAS, JJ., CONCUR.
PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY KING, P. J.
IRVING, J., DISSENTS WITHOUT WRITTEN OPINION.
PAYNE, J., DISSENTING:
¶ 14. In reviewing the majority's reasoning and conclusion in this case, I must respectfully dissent to the majority's affirmance on both issues raised. First, I take issue with the majority's decision to affirm the chancellor's finding regarding alimony.
¶ 15. In his decision, the chancellor only opted to award Theresia three years of rehabilitative alimony. As described further below, it appears to me the chancellor abused his discretion in his award of alimony, and I would opt to reverse and remand for a new determination of alimony.
¶ 16. Theresia argues the nature of the alimony awarded, rehabilitative periodic rather than general periodic, was inequitable to her. In deciding the way he did, the chancellor reasoned that the time period he set for rehabilitative alimony would provide Theresia enough time to complete the educational requirements necessary to acquire her teacher certification. When Theresia acquired her certification and was working in the teaching profession, the chancellor reasoned her income would suffice her needs and would negate the need for Lance to continue alimony payment. However, the chancellor erred in not taking into consideration the Armstrong factors which enunciate the test for the court to apply in determining whether or not to award periodic alimony.
*13 ¶ 17. "The award of periodic alimony arises from the duty of the husband to support his wife. `The husband is required to support his wife in the manner to which she has become accustomed, to the extent of his ability to pay.' In determining the proper amount of alimony, the chancellor should consider the Armstrong factors...." Johnson v. Pogue, 716 So.2d 1123 (¶ 25) (Miss.Ct.App.1998).
¶ 18. The majority cites the Armstrong factors that our courts use in determining alimony awards. In Armstrong, the couple was married for twenty-one years and two children were born to their marriage. Shortly after their marriage, the husband attended college then took a job where he remained employed for seventeen years. The wife opted to forego higher education to stay at home and care for their two children, largely depending on the husband to financially support the family. In granting the divorce, the chancellor only ordered the husband to pay the wife $175 per month for two years as "rehabilitative" alimony and failed to award either party attorneys' fees.
¶ 19. On appeal, the Mississippi Supreme Court stated, "[Mrs. Armstrong] ... is departing a 21 year marriage with primary custodial responsibility for two minor children. She is embarking on a new course in life with little formal education and meager job experience to equip her for her journey. Under the facts of this case, equity requires more than the time-limited award. [Mrs. Armstrong] is entitled to periodic alimony as a flexible means of protecting her needs as they arise during her unmarried status, if [Mr. Armstrong] is financially able to assist her." Armstrong, 618 So.2d at 1281.
¶ 20. The facts in the case sub juice are so similar to the Armstrong case, we are bound to review the Hoggatts' matter in light of the Armstrong precedent.
¶ 21. First, we examine the ability of Lance to pay. Lance quit his job making $41,000 per year to accept a job making $37,000. However, as stated in the briefs, he did purchase a car for $26,000 shortly after the divorce, and making virtually the same salary, Lance was certainly able to afford to pay more than the $450 per month the court awarded Theresia in alimony.
¶ 22. Next, we examine the manner of lifestyle to which Theresia had become accustomed. For the last half of the marriage, Lance was the "breadwinner" for their family of four, and the family relocated when Lance took on new pastorates. With Lance's job as pastor, the family was provided housing and a steady source of income, with Theresia and the children being totally dependent on Lance's employment to provide the family with an income, housing, and other necessities.
¶ 23. Looking to Theresia's post-divorce situation, Theresia has been left with no career opportunity, two minor children to care for, no housing of her own and is living with her parents for lack of anywhere else to go. Contrarily, Lance is permitted to walk away from the eighteen year relationship with the graduate degrees he could not have earned but for Theresia's sacrifices during the marriage. Theresia is left with no means of support for herself and their two children, now being forced to start over with a new career. Theresia had been accustomed to living a comfortable, but modest lifestyle, not worrying about paychecks or food or housing. To not provide her with the same amenities after her separation from Lance goes against established precedents and, in my opinion, is highly inequitable.
¶ 24. In addition to the Armstrong case, the case of Tutor v. Tutor, 494 So.2d 362 (Miss.1986), addressed a similar situation as is found with the Hoggatts. In Tutor, the husband was a neurosurgeon with a total worth of over one million dollars. The wife had two years of college education and worked various clerical jobs earning approximately $22,000 per year. The Tutor court affirmed the award of monthly periodic alimony in the amount of *14 $2,500 to Mrs. Tutor and also increased the lump sump award of $50,000 to $150,000 saying the prior award was so inadequate that it constituted an abuse of discretion.
¶ 25. Although Lance Hoggatt as a minister by no means enjoys the salary of Dr. Tutor, Lance's situation does closely mirror that of Dr. Tutor in that he has means to earn a comfortable salary for the rest of his life by virtue of his education. Theresia Hoggatt, to the contrary, is similar in status to Mrs. Tutor in that she facilitated his education and then largely depended upon her husband's salary to maintain her comfortable lifestyle, and thus is entitled to enjoy that lifestyle even after the divorce.
¶ 26. As stated in Tutor, "The wife is entitled to support corresponding to her rank and condition in life, and the estate of her husband." Tutor, 494 So.2d at 364 (citing Jenkins v. Jenkins, 278 So.2d 446, 449-50 (Miss.1973)). According to Tutor and Armstrong, Theresia is entitled to continue living in the same manner after the divorce as she had grown accustomed to living during the marriage. The chancellor erred in failing to carefully examine this factor in arriving at an equitable determination of alimony to be awarded to Theresia.
¶ 27. As we take a final look at the Armstrong factors, we conclude the chancellor failed to consider the final factor which describes "any other factor deemed by the court to be `just and equitable' in connection with the setting of spousal support." Johnson, 716 So.2d at 1130. Specifically, had the chancellor taken into account what each party would be left with once the divorce became a reality, I'm certain he would have arrived at a different judgment.
¶ 28. As already extensively described, during the approximate eighteen-year marriage each party supported the other for half the time: Theresia worked the first half to help Lance finish school, and Lance used that education to work the latter half to support Theresia as a homemaker and mother to their two adopted children. With Lance's attaining graduate degrees and Theresia's not having had opportunity to do so for herself, this divorce marks the beginning of a whole new life for Theresia that Lance will not have to experience. The majority chooses to concentrate on Theresia's plans to complete her education degree, thus obviating the need for Lance to support her with the income he receives. In reaching such conclusion, the majority puts both Lance and Theresia on "level ground" for the purposes of determining how much it will cost to maintain each's lifestyle after the divorce. But, what about all those years Theresia spent at home raising the children and moving with Lance each time he entered a new pastorate? Throughout that time, Theresia was unable to pursue any kind of job or schooling to better her situation. For this sacrifice, she is now left to start over with essentially nothing, while Lance gets to pick right up and keep moving with the degrees Theresia helped him attain. Such plight for Theresia is so inequitable as to require our intervention to remedy such discrepancy.
¶ 29. Again reviewing what each party is left with after the divorce, Lance is able to continue on financially in the manner of lifestyle to which he has been accustomed, buying a new car in the process and relocating to a new job across the county that he had sought out independently of Theresia. Contrarily, Theresia is essentially starting from scratch with a new career and two children to care for as a single parent. She has no home, no income, no prospects for a job in her desired career until she receives her teaching certification in at least two more years, and no experience to allow her to reenter the job market above entry level.
¶ 30. Through Theresia's sacrifices to put Lance through school and through Lance's attaining the graduate degrees, he had "value added" for the rest of his life, *15 that is, educational degrees that cannot be taken away. With Theresia's contributions to help Lance have a productive and successful future, she forewent adding value to her own career in the future as she was unable to further her education. In evaluating the vastly different plights in store for Lance and Theresia, I find the chancellor was clearly in error in not taking into account the post-divorce situations in which each party would find himself and herself. I would fervently admonish the chancellor to review the futures of Lance and Theresia Hoggatt in light of the previous discussion regarding the value that has been added to Lance's future and has not been added to Theresia's.
¶ 31. "In reviewing domestic relations matters, this Court will not disturb the factual findings of a chancellor which are supported by credible evidence, unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Carnathan v. Carnathan, 722 So.2d 1248 (¶ 8) (Miss.1998) (quoting Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994)). As the chancellor stated regarding the end of the Armstrong's twenty-one year marriage and as I conclude applies to the dissolution of the Hoggatts' eighteen-year marriage, "equity requires more than the time-limited award." Armstrong, 618 So.2d at 1282.
¶ 32. I must disagree with the majority in this case and find that the chancellor erred in only awarding three years' alimony to Theresia. Lance was able to pay more, and by virtue of Tutor and Armstrong and other like cases, Theresia is entitled to maintain the same lifestyle she enjoyed during the marriage. Certainly Theresia's living with and depending on her parents to meet her and her children's basic needs is not what these courts envisioned should befall a woman who finds herself in such an unfortunate position. Nor should the courts fail to recognize that parents of divorcees have no duty to provide what the husband did not provide, as Lance alleged Theresia's parents did.
¶ 33. Next, regarding awarding attorney's fees, I must also disagree with the majority's position that Theresia is not due attorney's fees. "It is well settled in Mississippi that if a party is financially able to pay an attorney, an award of attorney's fees is not appropriate." Benson v. Benson, 608 So.2d 709, 712 (Miss.1992). "[A]n award of attorney's fees in divorce cases is largely a matter entrusted to the sound discretion of the trial court. Absent an abuse of discretion, the chancellor's decision in such matters will generally be upheld." Armstrong, 618 So.2d at 1282 (citing Martin v. Martin, 566 So.2d 704, 707 (Miss.1990)).
¶ 34. Reviewing the facts and circumstances surrounding the chancellor's decision not to award attorney's fees, I cannot escape the sound conclusion that the chancellor erred in his decision. As stated above, an award of attorney's fees is only appropriate if a party is unable to pay. In the case sub judice, Theresia is unable to pay. As stated before, Theresia had no job, was a full-time student, and was living with her parents while caring for the couple's two minor children. As her financial situation does not provide her the money necessary to pay her attorney's fees regarding this matter, I cannot fathom how the majority fails to find that the chancellor abused his discretion in failing to evaluate Theresia's financial situation according to the afore stated standard of review and to award her attorney's fees.
¶ 35. In reaching the conclusion that Theresia is due attorney's fees, I also note how such calculation is properly made. The supreme court has concisely established factors to determine an amount of attorney's fees to award.
The issue of determining attorney's fees in domestic cases is largely left to the discretion of the chancellor. The appropriate fees depend on a variety of factors including a consideration of the ability of a party to pay the fee, the skill and reputation of the attorney employed, the complexity of the case, and *16 the degree of responsibility involved in management of the case. Additionally, the amount of time and labor required, the customary charge for similar services in the community, and the preclusion of other employment by the attorney due to the acceptance of the case are relevant factors to consider.
Mixon v. Mixon, 724 So.2d 956 (Miss.Ct. App.1998) (citing McKee v. McKee, 418 So.2d 764, 767 (Miss.1982)).
¶ 36. Pursuant to Mixon, I find the statement of attorney's fees included in the record excerpts to be a fair and accurate report of the time and labor required for a skilled attorney to prepare this case. In further consideration of the ability of each party to pay, I find it evident that Lance's job situation enables him to pay his fees while Theresia's financial situation does not allow her to pay her fees. For the aforementioned reasons, this issue of attorney's fees should be remanded to allow the chancellor to determine an appropriate award of attorney's fees to Theresia, pursuant to Mixon.
¶ 37. For the reasons stated herein, I would reverse and remand on both issues to allow a proper calculation of periodic alimony and attorney's fees for Theresia Hoggatt.
KING, P.J., JOINS THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Her attorney states on appeal that though she was in reasonably good health, she had been shot during the course of her duties. The implication is that there were some continuing health problems from her injuries. According to Mrs. Hoggatt's testimony, however, she was not shot but another officer with her had been. Perhaps her appellate counsel understood the record differently than we do and honestly made the statement that appears in the brief. I trust that is so.