800 So.2d 1239 (2001)
Randy WELLS, Appellant,
v.
O. Renee WELLS, Appellee.
No. 2000-CA-00319-COA.
Court of Appeals of Mississippi.
November 27, 2001.
*1241 Michael V. Ratliff, Hattiesburg, Attorney for Appellant.
John Gordon Roach Jr., Jackson, Attorney for Appellee.
Before KING, P.J., THOMAS, and LEE, JJ.
LEE, J., for the court.

PROCEDURAL HISTORY AND FACTS
¶ 1. This appeal stems from a judgment of divorce and the chancellor's decision regarding details of the divorce. Randy and Renee Wells were granted a divorce based on irreconcilable differences by virtue of a February 11, 2000 order of the Pike County Chancery Court. Prior to the final judgment, Randy and Renee reached an agreement concerning custody and visitation issues relating to their minor daughter, the disposition of an automobile, rights to Randy's retirement account and ownership of certain real and personal property. The chancellor was left to decide the issues of child support, responsibilities for insurance payments, ownership of the marital home, alimony and attorney's fees, and various other issues.
¶ 2. In the judgment of divorce, Randy was ordered to pay $563 per month in child support, to maintain medical and dental insurance on behalf of the minor child plus cover expenses not covered by insurance, to provide Renee with a medical card, and to maintain a life insurance policy on himself with the child designated the beneficiary. Renee was awarded the marital home in McComb, Mississippi, as well as possession of the family van, with Randy being responsible to pay the tag and insurance, plus repairs over $200. Randy had been the primary "breadwinner" for the family, and the chancellor ordered him to pay alimony to Renee in the amount of $800 per month for three years, then $400 per month thereafter, since the mortgage which Renee was paying was expected to be paid off in three years. Randy incurred substantial debt while still married; however, the chancellor found those debts to have been incurred after the couple separated. Therefore, the judge ordered Randy liable for the debts listed in his financial declaration. The chancellor found Renee unable to pay her attorney's fees and ordered Randy to pay $3,750, which was one-third of the fees she had already incurred. The chancellor also placed a lien on the couple's real property known as "the camp" as security for Randy's obligation with regard to the judgment of divorce.
¶ 3. Randy appeals the chancellor's judgment to this Court, raising the following issues for our review: (1) whether the chancellor erred in his distribution of property between the parties; (2) whether the chancellor erred in requiring Randy to pay alimony to Renee as well as in ordering him to pay Renee's attorney's fees; and (3) whether the chancellor erred in the amount of child support he ordered Randy to pay.

DISCUSSION OF THE ISSUES

I. DID THE CHANCELLOR ERR IN HIS DISTRIBUTION OF PROPERTY BETWEEN THE PARTIES?
¶ 4. Randy first argues that the chancellor's distribution of property was not equitable. We look to our standard of *1242 review with regard to this issue. "This Court's scope of review in domestic relations matters is limited. We will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Carrow v. Carrow, 741 So.2d 200(¶ 9) (Miss.1999). This Court looks to the chancellor's application of the Ferguson factors when reviewing questions of equitable distribution. See Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss. 1994).
¶ 5. Randy and Renee filed a complaint for an irreconcilable differences divorce and also filed a property settlement agreement with the court. We first review the enforceability of the property settlement agreement and examine the binding nature of such document.
We have also historically recognized that parties may upon dissolution of their marriage have a property settlement incorporated in the divorce decree, and such property settlement is not subject to modification. A true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.
East v. East, 493 So.2d 927, 931-32 (Miss. 1986).
This Court has stated its policy on enforcing divorce settlements as follows: In property and financial matters between the divorcing spouses themselves, there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude. When the parties have reached agreement and the chancery court has approved it, we ought to enforce it and take as dim a view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts.
Weathersby v. Weathersby, 693 So.2d 1348, 1351 (Miss.1997). On appeal, Randy argues that since, as part of the property settlement agreement, he stipulated to a one-half division of his retirement account with Renee, the chancellor should have awarded him some interest or equity in the marital home. In other words, Randy implies that in exchange for stipulating in the agreement to divest himself of one-half of his pension in Renee's favor, he is somehow entitled to the same with regard to the house. However, such agreement was not incorporated into the settlement, and the parties left the chancellor with discretion to decide the issue of ownership and rights to the marital home. Randy has given no reasons nor cited any authority that would render him entitled to a share of the marital home in a "quid pro quo" sense simply because he agreed to allow Renee a one-half interest to his retirement account. Randy agreed to the particulars of the property settlement agreement. He has alleged no fraud or misrepresentation; thus, as with any contract we find he is bound to the terms upon which he unequivocally agreed. We find no merit to this argument.
¶ 6. We next look in the record to those assets the chancellor was left to equitably distribute between Randy and Renee. As detailed in their property settlement, Randy and Renee settled on distribution of some items. Specifically, Renee was given the family van, the couple each split rights fifty-fifty to Randy's retirement plan, and Randy was vested with ownership rights in the real property known as "the camp." In addition to receiving one-half of the retirement account, Renee was given an additional $5,000 in the retirement plan as consideration for her turning over her rights to the "camp" *1243 property. Aside from this agreement, the chancellor was left with the responsibility of equitably dividing the remaining property, which included the marital home and certain personal property. Concerning this remaining personal property, Randy argues the chancellor erred in not appointing an expert witness to value the personalty at issue. In Heigle v. Heigle, 771 So.2d 341 (Miss.2000), appointment of an expert was an issue, and the supreme court referred to Rule 706 of the Mississippi Rules of Evidence, which concerns appointment of experts.
M.R.E. 706 clearly authorizes the appointment of an expert upon the motion of a party. As the Court of Appeals correctly noted, "[t]he appointment of an expert by the court under Mississippi Rule of Evidence 706 is done sparingly, and then only in exceptional cases involving complex issues where the expert's testimony would be helpful to the trier of facts."
Heigle, 771 So.2d at (¶ 29). In Heigle, the "complex" valuation concerned a business partnership which was in bankruptcy, along with other financial issues stemming from the bankruptcy proceeding. In Ferguson, the supreme court also noted:
Property division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division. Therefore, expert testimony may be essential to establish valuation sufficient to equitably divide property, particularly when the assets are as diverse as those at issue in the instant case.
Ferguson, 639 So.2d at 929. In Ferguson, the "diverse" assets in need of valuation included a cattle farm operation, retirement funds and stock, and the marital home. We review the facts of this case and find that complex issues are not involved, as compared in Heigle and Ferguson; therefore, the chancellor did not abuse his discretion in failing to appoint his own expert to value the personal property at issue, which merely included miscellaneous housewares. Of note, as well, is the fact that Randy conducted his valuation himself, whereas Renee enlisted the services of an expert to valuate the same items. Beyond that, those values the chancellor opted to assign were within his discretion and, having found no abuse, we will not reverse.
¶ 7. We finally address the chancellor's division of certain personal property between Randy and Renee. The chancellor found that the total value of those assets subject to distribution was $6,025, and he awarded $2,925 worth of this property to Renee and $3,100 worth of the property to Randy. Randy now argues that since Renee received one-half the value of Randy's retirement, he in turn should have received some portion of the equity accumulated in the home. We find, though, that in making such assertion Randy is attempting to valuate the property as to make it numerically come out fifty-fifty. We have said before equitable distribution does not necessarily mean "equal" distribution. Draper v. Draper, 627 So.2d 302, 305 (Miss.1993).
¶ 8. In our review of the chancellor's judgment, we are not to conduct a Ferguson analysis anew, but are to review the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion. In his judgment, the chancellor described his reasons for the equitable division he made. He stated that although both parties contributed substantially to the accumulation of property, Renee clearly made a greater contribution to the stability and harmony of the marital and family relationship. Also, the chancellor noted that Renee's needs were substantially *1244 greater than Randy's, since her job skills were limited compared to Randy's skills. Although the chancellor did not address each and every Ferguson factor, we note that such analysis is not necessary. "The chancellor is not required to address each and every factor and may consider only the factors which he finds applicable to the marital property at issue." Burnham-Steptoe v. Steptoe, 755 So.2d 1225(¶ 24) (Miss.Ct.App.1999); see also Carrow, 741 So.2d at (¶ 10). We find that the chancellor's analysis was sufficient and, thus, we find no clear error in his division of the marital property in question. We affirm on this issue.

II. DID THE CHANCELLOR ERR IN REQUIRING RANDY TO PAY ALIMONY TO RENEE, AS WELL AS IN ORDERING RANDY TO PAY RENEE'S ATTORNEY'S FEES?

A. Alimony
¶ 9. Randy complains on appeal that, based on the chancellor's division of property, he should not have been forced to pay alimony to Renee. "Whether or not to award alimony and the amount of alimony is largely within the discretion of the chancellor. We will not disturb the award on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error." Parsons v. Parsons, 678 So.2d 701, 703 (Miss.1996) (citations omitted).
¶ 10. In contesting the alimony award, Randy argues that the disparity between his and Renee's estates warrants that he should not be forced to pay alimony. Randy also claims that the chancellor erred in concluding that he was the owner of a business called "R & M Enterprises" which manufactured catfish callers and that the chancellor placed too much emphasis on the fact that Randy had an extramarital affair, imposing the alimony requirement as a punishment to Randy for such behavior. Randy cites the factors set forth in Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993), which are used in determining whether an award of alimony is proper. Those factors include:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong, 618 So.2d at 1280. In Brennan v. Brennan, 638 So.2d 1320 (Miss. 1994), the supreme court described other principles with regard to alimony awards:
The right to an award of periodic alimony flows from the duty of the husband to support his wife. The husband is required to support his wife in the manner to which she has become accustomed, to the extent of his ability to pay. The value of the wife's assets and income should be determined in order to ascertain her needs to maintain her position in life to which she had become accustomed, *1245 and such value is considered by the trial court in assessing both alimony and support. In other words, in determining the amount of alimony, if any, "[t]he chancellor should consider the reasonable needs of the wife and the husband's right to lead a normal life with a decent standard of living."
Brennan, 638 So.2d at 1324 (citations omitted).
¶ 11. We look to the chancellor's judgment and find that although he did not lay out the Armstrong factors individually and discuss them in great detail, he did note certain factors of significance, which included the disparity of estates, the fault element, and the abilities of each party to earn a living after the divorce. In our review of the facts in this case, we conclude that the remaining Armstrong factors are not determinative as would require the chancellor to review them each individually. Also, in Hoggatt v. Hoggatt, 766 So.2d 9 (Miss.Ct.App.2000), this Court found such detailed analysis to be unnecessary: "The chancellor must analyze an overall combination of the listed factors, likely not highlighting a single category such as length of marriage, prior standard of living, or ability to pay." Id. at (¶ 9).
¶ 12. Having identified the applicable legal principles, we next look to Randy's specific claims. We disagree with Randy's allegation that the chancellor awarded Renee alimony as a means to punish Randy for his behavior. As previously stated, the chancellor is not required to analyze each Armstrong factor individually in his opinion, but is required to view the "overall combination" of the factors as a whole, opting to address individual factors at his discretion. Id. The fact that the chancellor chose to comment on Randy's extramarital affair is not automatically indicative that the chancellor placed undue emphasis on this factor. Again, reviewing the facts of this case, we reasonably infer that the other factors not mentioned were close to equal between the parties; thus, the chancellor only highlighted those factors which he felt supported his decision. We find no error here.
¶ 13. Randy also argues that the chancellor erred in finding him to be the owner of the "R & M Enterprises" business. In his judgment, the chancellor stated:
The Court has also considered the needs of the parties for financial security with due regard to the income and earning capacity of each, which the Court finds that Randy has the ability to earn greater income because of his expertise in a very specialized field and Renee's more limited job skills. Renee's job capabilities have centered around secretarial jobs and substitute teaching and she is presently a first-time legal secretary. Randy is a long-time supervisor with Halliburton Offshore and has a business knows as "R & M Enterprises" which markets catfish callers.
¶ 14. The chancellor did not "focus" on R & M, as Randy claims, rather he was attempting to show that, in contrast to Renee's limited occupational skills, Randy was an experienced supervisor in his trained occupation and also possessed the capability and initiative to start his own business. Although the chancellor did not go into great detail with his Armstrong analysis, we find that he was wary of the proper elements, including the great disparity between Randy's estate and Renee's estate and each's earning capacity. For these reasons, we find the chancellor did not abuse his discretion in awarding alimony to Renee, and we affirm.

B. Attorney's fees
*1246 ¶ 15. Randy claims the chancellor erred in awarding attorney's fees to Renee.
"The award of attorney's fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards." The award of court costs is likewise entrusted to the sound discretion of the chancellor. The Mississippi Supreme Court has held that when a party is able to pay attorney's fees, an award of attorney's fees is not appropriate. However, where the record shows an inability to pay and a disparity in the relative financial positions of the parties, there is no error in awarding attorney's fees. The supreme court has also held that consideration of the relative worth of the parties, standing alone, is insufficient. The record must reflect the requesting spouse's inability to pay his or her own attorney's fees.
Bates v. Bates, 755 So.2d 478 (¶ 11) (Miss. Ct.App.1999) (citations omitted). The chancellor awarded Renee one-third of her attorney's fees, but did not enlighten us as to exactly why he chose to make such award. The chancellor simply wrote, "Renee is found to be unable to pay her attorney fees and therefore, is hereby awarded attorney's fees in the amount of $3,750 to be paid by Randy to Renee within six (6) months from the date of this opinion."
¶ 16. The record contains financial statements and exhibits from both Randy and Renee, including itemized lists of personal property, tax forms, and affidavits. From our review of these documents, we find that Renee's only available liquid asset is the alimony she receives from Randy. Her financial statement shows that her expenses substantially exceed her income each month, even with the alimony. Renee argues that she should not be forced to liquidate her portion of Randy's retirement plan to pay attorney's fees, which would cause her to incur tremendous tax consequences and penalties for early withdrawal.
¶ 17. In other cases, we have addressed whether an attorney's fees award was proper when a wife had little or no liquid assets. In East v. East, 775 So.2d 741 (Miss.Ct.App.2000), this Court stated:
[W]here the only liquid asset is the alimony award and the party seeking fees has otherwise demonstrated an inability to pay the fees, a reasonable award is appropriate, providing the McKee factors, regarding inability to pay, the skill of the attorney, the nature and novelty of the case, usual fees for similar cases of a similar character, are satisfied, then an award of attorney's fees is appropriate.
East, 775 So.2d at (¶ 16). Also, in Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss. 1994), the court stated the wife need not liquidate her savings account to pay her attorney's fees.
¶ 18. Renee only asked for one-third of her attorney's fees, and that is the amount the chancellor awarded to her. We note that the chancellor did not review those factors described in McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), in his statement awarding attorney's fees, simply opting to state his conclusion that "Renee is found to be unable to pay her attorney fees." Nonetheless, where this general statement may be found insufficient in other cases, we review the remainder of his opinion to find that the chancellor did review the relative financial status of each party and did have ample evidence to make his conclusion that Renee was unable to pay her attorney's fees. We find such cumulative evaluation to be sufficient to support his finding, and we will not disturb.
*1247 ¶ 19. Renee points out that Randy should have to pay interest on the judgment for attorney's fees, pursuant to Miss.Code Ann. § 11-3-23 (1972). We find such penalty appropriate and assess statutory penalties and interest against Randy on the judgment for attorney's fees.

III. DID THE CHANCELLOR ERR IN THE AMOUNT OF CHILD SUPPORT HE ORDERED RANDY TO PAY?
¶ 20. Randy finally argues that the chancellor erred in calculating the amount of child support he owed. Section 43-19-101 of the Mississippi Code Annotated (Rev.2000) provides that Randy should pay fourteen percent of his adjusted gross income for support of his one minor child. The chancellor found Randy's adjusted monthly gross income to be $3,763.00 and ordered that Randy pay fourteen percent of that amount, or $563.00 per month, for Magan's support. Randy argues that the proper amount should have been $526.82, an amount which is calculated based on deductions for health insurance and a savings fund. Renee claims these are not mandatory deductions and should not be used in calculating the adjusted gross monthly income.
¶ 21. The Mississippi Code finds the following to be legally mandated deductions: "(i) Federal, state and local taxes. Contributions to the payment of taxes over and beyond the actual liability for the taxable year shall not be considered a mandatory deduction; (ii) Social security contributions; (iii) Retirement and disability contributions except any voluntary retirement and disability contributions...." Miss.Code Ann. § 43-19-101(b) (Rev. 2000). In Lee v. Stewart, 724 So.2d 1093(¶ 9) (Miss.Ct.App.1998), this Court pointed out that paycheck deductions for medical insurance, a 401K retirement fund, and a credit union account were not mandatory deductions. Similarly, we find that the court-ordered medical and dental insurance for the child and the other means of support Randy was ordered to provide for the child are not "mandatory" within the meaning of section 43-19-101; therefore, the chancellor did not commit error in declining to consider these payments when he made his statutory calculation of child support. We find no error here.
¶ 22. As described herein, we have found no error in the chancellor's decisions on any issues raised herein. Accordingly, we affirm on all issues, plus assess statutory damages on the previous award of attorney's fees.
¶ 23. THE JUDGMENT OF THE PIKE COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED TO THE APPELLEE. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. BRIDGES, J., SPECIALLY CONCURS WITH A SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J., AND JOINED IN PART BY BRANTLEY, J. IRVING, J., DISSENTS WITHOUT A SEPARATE WRITTEN OPINION.
BRIDGES, J., Specially Concurring:
¶ 24. I concur in the analysis and result in Issue I, the distribution of property, Issue II(A), alimony and Issue III, the amount of child support. However, I disagree with the discussion of Issue II(B), the awarding of attorney's fees to Renee, and attempt to hereby enlighten the bench as to the need for specific findings in such matters for the benefit of the appellate courts.
*1248 ¶ 25. According to the Mississippi Supreme Court in Overstreet v. Overstreet, 692 So.2d 88, 93 (Miss.1997), the spouse requesting an award of payment of his or her attorney's fees must show positive evidence of his or her own inability to pay. See also Austin v. Austin, 766 So.2d 86(¶ 15) (Miss.Ct.App.2000); Magee v. Magee, 754 So.2d 1275(¶ 13) (Miss.Ct.App. 1999); Bredemeier v. Jackson, 689 So.2d 770, 778 (Miss.1997); Smith v. Smith, 614 So.2d 394, 398 (Miss.1993); Martin v. Martin, 566 So.2d 704, 707 (Miss.1990). I concur with the majority's opinion that Renee Wells made a sufficient showing that she was unable to pay her attorney for his services connected with this divorce. She submitted thorough evidence of her financial situation through detailed itemization of her monthly expenses contrasted with her current monthly salary and supporting affidavit.
¶ 26. No error may be found by this Court regarding the chancellor's award of attorney's fees to a party where there is evidence of that party's inability to pay through proof of income and financial status. Austin, 766 So.2d at (¶ 15). As such, I would not reverse and remand this case on this point alone. However, I would like to point out that the case law also provides that the chancellor should record specific findings of these matters, giving his reasoning as to why he granted the award of attorney's fees. Bullock v. Bullock, 733 So.2d 292(¶ 54) (Miss.Ct.App.1998); McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982). The Mississippi Supreme Court in McKee, pronounced that:
[I]n addition to the relative financial ability of the parties, [the chancellor is to consider] the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
* * *
[T]he allowance of attorney fees ... must be fair and just to all concerned after it has been determined that the legal work being compensated was reasonably required and necessary.
McKee, 418 So.2d at 767. See Bullock, 733 So.2d at (¶ 54).
¶ 27. In my opinion, the chancellor did not make findings on any of these points. He simply granted the amount that Renee was asking in attorney's fees with no further specificity noted on the record regarding his reasoning and his findings on the legitimacy of the fees, the work done to acquire those fees, Renee's financial hardships, etc. I am convinced that, while the law does not permit this Court to overturn an award of attorney's fees unless a proper showing of inability to pay has not been made by the party requesting the award, it is necessary for the chancellor to make specific findings and give specific reasoning for his decision. As I have stated before in my assessment of the Mississippi Supreme Court decision in Sobieske v. Preslar, 755 So.2d 410 (Miss. 2000), regarding the need for specificity in findings dealing with child custody, I believe that chancellors should be and have been in the past, required to make specific findings when ruling on matters that are domestic in nature because of the sensitivity of the issues sometimes discussed in those cases. In family law issues such as divorce, child custody and child support, the courts are delving into very personal and guarded matters that should be dealt with in the most tactful manner. Further, because of the personal and delicate nature of these types of cases, the chancellor *1249 owes the parties as much as he can give them in the way of explaining his decision, a decision that will most times affect the lives of everyone involved.
¶ 28. I hold true to my position that the chancellor must not take these matters lightly. Findings in domestic matters, no matter what they be, should be discussed in a very definite and detailed fashion for the utmost benefit of all parties and participants. The Mississippi Supreme Court has said as much in cases such as Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994), Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955) (both speaking about the specificity of findings on issues dealing with alimony), Albright v. Albright, 437 So.2d 1003 (Miss.1983) (speaking about the specificity required in issues dealing with child custody) and Brocato v. Brocato, 731 So.2d 1138 (Miss.1999) (echoing the mandate by Miss.Code Ann. § 43-19-103 (Rev.2000) that the chancellor must make specific findings on the record on the issue of awarding child support above the statutory guidelines).
¶ 29. It stands to reason that the chancellor should then make these type of specific findings on any and all matters related to issues involving divorce and children, despite the connotation in Sobieske that this Court may sometimes assume that the chancellor made appropriate findings in certain cases without specific reasoning provided. Sobieske, 755 So.2d at 411-12. If Sobieske purports to overrule these other cases requiring a chancellor to make detailed findings in the area of family law and allowing reviewing courts to simply presume that the chancellor made those findings even if they are absent from the record, then I was not made aware of such. If those were the court's intentions, it is my opinion that those intentions should be unequivocally announced to all chancellors and this Court without any ambiguity. Otherwise, I opine that specific findings by a chancellor must always be required in cases involving the dissolution of marriages and awards granted in those dissolutions.
CHANDLER, J., JOINS AND BRANTLEY, J., JOINS IN PART THIS SEPARATE OPINION.