876 So.2d 1038 (2004)
Elizabeth ERICSON Executrix of the Estate of Richard Spang, Deceased, Appellant/Cross-Appellee,
v.
Debra Sue TULLOS, Appellee/Counter Claimant (Cross-Appellant),
v.
Elizabeth Ericson, Executrix of the Estate of Richard Spang, Deceased.
No. 2002-CA-00200-COA.
Court of Appeals of Mississippi.
June 22, 2004.
*1039 Debra Lynn Allen, Jackson, Attorney for Appellant.
B. Ruth Johnson, Attorney for Appellee.
Before BRIDGES P.J., IRVING and GRIFFIS, JJ.
BRIDGES, P.J., for the Court.
¶ 1. This appeal comes from a divorce case heard in the Chancery Court of Rankin County. On May 8, 2000, Richard Spang filed his complaint for divorce alleging habitual cruel and inhuman treatment as grounds for the divorce and, in the alternative, irreconcilable differences. The parties agreed to execute a voluntary consent to divorce on the grounds of irreconcilable differences and the only issues presented to the court for resolution were financial in nature. Each party sought an equitable distribution of the assets, with Richard seeking a finding that certain assets were non-marital in nature. In addition, Richard sought alimony from his former wife, Debra Sue Tullos.
¶ 2. A trial was held after which the court requested, and each party presented, extensive proposed findings of fact and conclusions of law. On November 30, 2001, the court issued its own detailed findings of fact and conclusions of law and on January 8, 2002, the court entered its final judgment of divorce.
¶ 3. Richard appealed to this Court on the sole issue of alimony. However, Debra filed a motion to dismiss the appeal, along with a cross-appeal, alleging that dismissal was proper since no post trial motions had been filed. After reviewing Debra's motion to dismiss, this Court denied the motion and now addresses the appeal on the merits.
¶ 4. Following the perfection of the appeal in this case, Richard Spang died and an order was entered in this Court on March 22, 2004 substituting the executrix of said deceased's estate as a party in his place and stead.
ISSUE ON APPEAL
I. WHETHER THE CHANCELLOR ERRED IN DENYING AN AWARD OF ALIMONY TO RICHARD.
ISSUE ON CROSS-APPEAL
I. WHETHER THE CHANCELLOR'S DECISION WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND WHETHER HE COMMITTED MANIFEST ERROR IN DETERMINING MARITAL ASSETS AS EITHER NON-MARITAL OR MARITAL.

FACTS
¶ 5. Richard was seriously injured and disabled on January 30, 1990. He suffers a C-5, C-6 compression leaving him a complete quadriplegic with no use of his legs, limited use of his right arm and limited lung capacity. He is severely disabled, confined to a wheelchair, and rendered *1040 a quadriplegic. He also requires attendant care assistance for help in his daily and nightly activities. The assistance he requires includes: bathing, dressing, physical exercise, massage, help in using his standing device, getting in and out of bed, turning nightly, transportation, meal preparation, and maintaining his home and medical equipment. Richard also uses a catheter and requires assistance to cleanse his bowels.
¶ 6. In December 1991, Richard and Debra began living together. On October 21, 1991, they were married in Tupelo, Mississippi, and there were no children born of the marriage. On May 8, 2000, Richard filed his complaint for divorce alleging habitual cruel and inhuman treatment as grounds for the divorce and, in the alternative, irreconcilable differences; however, the parties voluntarily entered a valid consent to divorce on the grounds of irreconcilable differences and also agreed to allow the court to decide certain issues. The three issues before the lower court for resolution were the equitable distribution of marital property, whether Richard should be awarded alimony, and attorneys fees. Richard was awarded the majority of his remaining settlement proceeds in the court's equitable distribution, but was denied an award of alimony.
¶ 7. It is from this judgment of divorce that Richard appealed and Debra cross-appeals.

STANDARD OF REVIEW
¶ 8. In Mississippi, the standard of review employed in domestic relations cases is limited by the substantial evidence/manifest error rule.
This Court may reverse a chancellor's findings of fact only when there is no substantial credible evidence in the record to justify his findings. Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard.
Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002) (citations omitted).

ANALYSIS
I. WHETHER THE CHANCELLOR ERRED IN DENYING AN AWARD OF ALIMONY TO RICHARD.
¶ 9. In the area of domestic relations, the division of marital assets is governed under the law as stated in Hemsley and Ferguson.[1]
First, the character of the parties' assets, marital or nonmarital, must be determined pursuant to Hemsley. The marital property is then equitably divided, employing the Ferguson factors as guidelines, in light of each parties' nonmarital property. If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done.
Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1995) (citations omitted).
¶ 10. Whether to award alimony is governed under the law as stated in Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993). The Mississippi Supreme Court stated that "alimony awards are within the discretion of the chancellor and his discretion will not be reversed on appeal unless the chancellor was manifestly *1041 in error in his finding of fact and abused his discretion. In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." Id. at 1280 (citations omitted). The guidelines to be used in determining if alimony is appropriate in a particular case were established in Armstrong. They are:
(1) The income and expenses of the parties;
(2) the health and earning capacities of the parties;
(3) the needs of each party;
(4) the obligations and assets of each party;
(5) the length of the marriage;
(6) the presence or absence of minor children in the home;
(7) the age of the parties;
(8) the standard of living of the parties, both during the marriage and at the time of the support determination;
(9) the tax consequences of the spousal support order;
(10) fault or misconduct;
(11) wasteful dissipation of assets by either party; or
(12) any other factor deemed just and equitable.
Id. at 1280. In examining these factors, the chancellor may consider them as an "overall combination" and need not individually list each one. Hoggatt v. Hoggatt, 766 So.2d 9 (¶ 9) (Miss.Ct.App.2000). Unlike property division, an on-the-record analysis of the Armstrong factors is not necessary. Thompson v. Thompson, 816 So.2d 417, 420(¶ 9) (Miss.Ct.App.2002).
¶ 11. The court applied these factors to the evidence presented and determined that an award of alimony was not appropriate. The evidence established (1) Debra currently earns $87,084 gross income per year as an executive at State Farm Insurance Company and she is in reasonably good health, although she has had back surgery; (2) Richard's current monthly income is derived solely from Social Security and consists of $1,190 and long term disability payments of $1,064.08 for a total of $2,254.08; however, his long term disability payment of $1,064.08 ends in 2006, at the time when Richard will have by that time depleted his assets, therefore, reducing his interest income; (3) Richard is obviously disabled and limited in his earning capacity; (4) the marriage is of moderate length; (5) there are no minor children of the parties; (6) Debra was born March 11, 1957, and is forty-seven years of age and Richard was born June 30, 1941, and is sixty-three years of age; (7) the parties enjoyed a reasonably comfortable standard of living in that they owned their own home and have generally done so since they were married; (8) neither party wasted or dissipated assets; and (9) since Richard is disabled, he will need to pay personnel to help in his daily activities and will need to do so every day of his life.
¶ 12. In the present case, the chancellor, in his findings of facts and conclusions of law, properly analyzed and applied the Armstrong factors in this case with respect to alimony. Upon reviewing the detailed analysis taken by the court of the position and needs of the parties, we find that the chancellor in no way abused his discretion in finding that Richard was not entitled to an award of alimony. Therefore, we find this issue is without merit and we can not say the chancellor abused his discretion.

ISSUE ON CROSS-APPEAL
I. WHETHER THE CHANCELLOR'S DECISION WAS AGAINST *1042 THE OVERWHELMING WEIGHT OF THE EVIDENCE AND WHETHER HE COMMITTED MANIFEST ERROR IN DETERMINING MARITAL ASSETS AS EITHER NON-MARITAL OR MARITAL.
¶ 13. Debra argues that the chancellor erred in his determination that the personal injury proceeds and other assets (including the adjacent lot, the AmSouth CD, and the Met Life insurance policy (f/k/a New England Mutual Life) were non-marital property. She also claims that the chancellor erred in his refusal to award Debra pre-marital and post-marital agreed upon temporary order contributions to the State Farm Insurance Company Incentive and Thrift Plan.
¶ 14. This Court must look to the chancellor's application of the Ferguson factors when reviewing questions of equitable distribution. Ferguson, 639 So.2d at 928; see also Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1995); Hemsley v. Hemsley, 639 So.2d 909, 914-15 (Miss.1994). In Ferguson, the Mississippi Supreme Court held that chancery courts should consider the following guidelines when "attempting to effect an equitable distribution of marital property."
(1) Substantial contribution to the accumulation of property
a) direct or indirect economic contribution
b) contribution to stability and harmony of the marital relationship measured by quality, quantity of time spent on family duties and duration of marriage
c) contribution to the education, training or other accomplishment bearing on the earning power of spouse accumulating assets
(2) Degree to which each spouse has expanded, withdrawn, or otherwise disposed of marital assets and any prior distribution of assets.
(3) Market value and emotional value of assets subject to distribution.
(4) Value of assets not ordinarily absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift or by an individual spouse.
(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution.
(6) Extent to which property division may be utilized to eliminate periodic payments and other potential sources of friction.
(7) Needs of the parties.
(8) Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.
¶ 15. This Court has also held that "the chancellor is not required to address each and every factor and may consider only the factors which he finds applicable to the marital property at issue." Burnham-Steptoe v. Steptoe, 755 So.2d 1225, 1233(¶ 24) (Miss.Ct.App.1999) (citing Weathersby v. Weathersby, 693 So.2d 1348, 1354 (Miss.1997)). "All property acquired during marriage is considered marital property, and subject to equitable distribution, unless it is clearly shown to be a separate estate apart from the marriage." Cork v. Cork, 811 So.2d 427, 430 (¶ 13) (Miss.Ct.App.2001) (citing Hemsley, 639 So.2d at 914).
¶ 16. In his findings of fact and conclusions of law, it is clear that the chancellor equitably disposed of all of the property, including various investment accounts, IRA accounts, ESOP accounts, the marital home with its accompanying lot and accrued *1043 value of certain "whole life" insurance policies, in accordance with the Ferguson factors and applicable case law. This Court is not at liberty to disturb that decision.
¶ 17. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT AND CROSS APPEAL. COSTS OF THIS APPEAL ARE ASSESSED ONE HALF TO THE APPELLANT AND ONE HALF TO THE APPELLEE.
KING, C.J., SOUTHWICK, P.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994) and Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994).