909 So.2d 1245 (2005)
Ramona Allen SHOFFNER, Appellant
v.
Albert J. SHOFFNER, III, Appellee.
No. 2002-CA-01330-COA.
Court of Appeals of Mississippi.
February 8, 2005.
*1247 Nathan P. Adams, Greenville, attorney for appellant.
William R. Striebeck, Greenville, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Ramona Allen Shoffner and Albert Shoffner, III were divorced on the grounds of irreconcilable differences on June 7, 2000, in the Chancery Court of Washington County, with the court reserving jurisdiction to hear and rule on other contested issues of the parties. There were four orders entered by the chancellor pertaining to this divorce. It is from the Final Decree issued on December 31, 2002, that Mrs. Shoffner appeals and asserts the following issues which we quote verbatim:
I. The decision of the Chancellor not to award Mrs. Shoffner an [sic] equity in the marital residence of the parties was manifestly wrong, clearly erroneous and based upon an erroneous legal standard.
II. The Court was manifestly wrong in charging Mrs. Shoffner with any of Mr. Shoffner's debts.
III. The Chancellor failed to make an on-the-record determination of the economic issues as required by Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994) and Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994), Henderson v. Henderson, 703 So.2d 262 (Miss. 1997).
¶ 2. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 3. Ramona Allen Shoffner and Albert J. Shoffner III were married on June 6, 1980, and separated on February 6, 2000. Two children were born of this marriage, Albert J. Shoffner IV, born September 3, 1980, and Emily Dawn Shoffner born on October 18, 1982.
¶ 4. During their nineteen years of marriage, Mr. Shoffner was employed by his father as a carpenter for Shoffner Construction Company. Mrs. Shoffner worked at Supervalue, Inc, and then at Wells-Lott Drug Store. At the time of this appeal she was working at Eckerds as a pharmacy technician and at Fergies's Fairfield Inn as a hostess.
¶ 5. On March 16, 2000, Mrs. Shoffner filed for divorce alleging cruel and inhuman treatment, and irreconcilable differences. On June 6, 2000, both parties executed an agreement to permit the court to enter an irreconcilable differences divorce and to decide the remaining contested issues. On June 7, 2000, the chancellor entered a decree of divorce based on irreconcilable differences, and reserved jurisdiction over the parties to hear and rule on all other stipulated contested issues. The Court ordered the parties to get an appraisal of the martial residence, and to provide it with a statement of all assets, *1248 liabilities, including the value of all profit sharing plans, retirement plans, and insurance.
¶ 6. On October 16, 2001, the chancellor entered what was styled as "Order Concerning Findings of Fact, Conclusions of Law and Judgment." The chancellor ordered that the parties furnish her with additional information so that she could divide the debts and the household furniture. The court also found that Albert IV was twenty-one and therefore emancipated, but ordered child support for Emily in the amount of $200 a month. The chancellor awarded the marital residence to Mr. Shoffner, and deferred resolving the amount of equity Mrs. Shoffner would receive in the residence until she was furnished additional proof as to the bills incurred by each party, when the bills were incurred and the purpose of each bill. Also, the chancellor requested additional proof as to the purpose and use of retirement funds withdrawn and expended by Mrs. Shoffner.
¶ 7. On July 12, 2002, the court entered an opinion on the final contested issue of equitable distribution, specifically, the debts to be paid by each party, the amount of equity Mr. Shoffner should pay Mrs. Shoffner for the marital residence, and the division of the personal property. The chancellor found that after the parties were divorced, on June 7, 2000, Mrs. Shoffner withdrew her retirement funds from Super Value in the amount of $3,658.34, and that she also withdrew her retirement funds from Wells-Lott Drug Store in the amount of $34,679.28. The gross amount of the retirement accounts was $38,337.62, and one-half of that amount was $19,168.81. Mr. Shoffner did not have a retirement account. The chancellor determined that the house appraised at $52,500, with a mortgage of $23,843.72, leaving $28,656.28 equity in the house, and one-half of the equity was $14,328.14. The chancellor concluded that Mrs. Shoffner had not withdrawn the funds from her retirement account in good faith, and citing Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994) awarded Mr. Shoffner one-half of the retirement account based on his contributions to the marriage. The chancellor determined that Mrs. Shoffner was due one-half of the equity in the home which should be off-set by one-half of the retirement funds due to Mr. Shoffner. Although this was not an equal division in that the retirement funds owed to Mr. Shoffner exceeded by $4,840.67 the equity of Mrs. Shoffner in the home, the chancellor noted that Mr. Shoffner received some benefit from the debts that Mrs. Shoffner paid with the funds from her retirement account, and it was therefore equitable. The chancellor held the debts of the parties to be joint marital debt and ordered that Mr. Shoffner pay $9,820.52 of debt and Mrs. Shoffner pay $6,486.04.
¶ 8. On July 19, 2002, Mr. Shoffner filed a motion for a new trial or alternatively, a motion to amend or alter judgment. At a December 31, 2002 hearing, the chancellor disposed of the matter as a motion to amend opinion or ruling, as an order was never submitted to the court regarding its July 12, 2002, opinion. The proof showed that Emily was emancipated and therefore Mr. Shoffner no longer was required to pay child support. The proof showed that Mrs. Shoffner had filed Chapter 7 bankruptcy, but the chancellor held that it did not affect martial debts. Since the July 12, 2002, opinion Mr. Shoffner had made a loan to pay all the credit card debts, including the $6,486.04 the chancellor had ordered that Mrs. Shoffner pay. The chancellor then ordered that Mrs. Shoffner pay $150 a month to Mr. Shoffner for 50 months at eight percent interest in order to pay her portion of the marital debt in the amount of $6,486.04. The chancellor's *1249 final decree ordered Mrs. Shoffner to deliver a quitclaim deed for the marital residence to Mr. Shoffner, and that she begin making payments of $150 on the fifth of every month to Mr. Shoffner until the debt was paid in full.

ISSUES AND ANALYSIS
¶ 9. As Issues I and III are interrelated, the Court will address them jointly.

I.
The decision of the Chancellor not to award Mrs. Shoffner an [sic] equity in the marital residence of the parties was manifestly wrong, clearly erroneous and based upon an erroneous legal standard as the Chancellor failed to make an on-the-record determination of the economic issues as required by Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994) and Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994), Henderson v. Henderson, 703 So.2d 262 (Miss.1997).
¶ 10. Mrs. Shoffner contends that the chancellor erred by not awarding her any equity in the martial residence. She argues that the chancellor did not apply the factors delineated in Ferguson v. Ferguson, 639 So.2d 921(Miss.1994) to equitably divide their marital property, since the chancellor did not consider her direct monetary contribution to the marriage or her indirect economic contribution including raising the children, management of the household which included washing, ironing, cooking, and other duties. She also argues that the chancellor did not consider the needs of the parties in that Mr. Shoffner will inherit his father's established construction business, and that she is older than Mr. Shoffner and working two jobs to make ends meet. Finally, she argues the chancellor did not take into consideration that Mr. Shoffner's excessive drinking contributed to the instability of the relationship.
¶ 11. Our standard of review in divorce cases is clear, "[a] chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous." Duncan v. Duncan, 774 So.2d 418, 419 (¶ 4) (Miss.2000). When supported by substantial evidence the findings of a chancellor will not be disturbed on appeal unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Id. "Under the standard of review utilized to review a chancery court's findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not overturn the court on appeal unless its findings were manifestly wrong." Id. "For questions of law, our standard of review is de novo." Id.
¶ 12. As Mrs. Shoffner contests the chancellor's division of marital property we look to the factors set in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), that a chancellor must consider, where applicable, when dividing marital property. Those factors are as follows:
(1) economic and domestic contributions by each party to the marriage, (2) expenditures and disposal of the marital assets by each party, (3) the market value and emotional value of the marital assets, (4) the value of the nonmarital property, (5) tax, economic, contractual, and legal consequences of the distribution, (6) elimination of alimony and other future frictional contact between the parties, (7) the income and earning capacity of each party, and (8) any other relevant factor that should be considered in making an equitable distribution.
Love. v. Love, 687 So.2d 1229, 1231-32, (Miss.1997). "The chancellor is not required to address each and every factor and may consider only the factors which *1250 he finds applicable to the marital property at issue." Wells v. Wells, 800 So.2d 1239, 1244 (¶ 8) (Miss. Ct App.2001). "We have repeatedly held that in making an equitable division of the marital property, the chancellor is not required to divide the property equally." Id. When reviewing a chancellor's judgment in property division we are not to conduct a Ferguson analysis anew, but are to review the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion. Id. at 1243.
¶ 13. We turn now to Mrs. Shoffner's claim of having received no equity in the marital residence. This claim is not supported by the record. The record clearly reflects that the chancellor determined that Mrs. Shoffner was entitled to one-half of the equity in the marital home. However, the chancellor also determined that Mr. Shoffner was entitled to one-half of Mrs. Shoffner's retirement accounts. When doing an equitable distribution of property, a chancellor may do a division in kind, a division of cash from a mandated sale, a buy-and-sell between the parties, or by an offset in values. Mobley v. Mobley, 827 So.2d 714, (Miss.Ct.App.2002) (holding chancellor has authority to effect a partition by equal in kind division of the property, or by a sale of the property and division of the proceeds); Pittman v. Pittman, 652 So.2d 1105 (Miss.1995) (ordering chancellor to offset ex-husband's investment in an automobile against his ex-wife's lien against his reality). A chancellor also has the authority to divest title in order to equitably divide assets. See Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). In this instance, the chancellor choose to accomplish an equitable division by an offset of values. That is Mrs. Shoffner was entitled to one-half the equity in the home, $14,328.14, and Mr. Shoffner was entitled to one-half of Mrs. Shoffner's retirement accounts, $19,168.81. Rather then having Mrs. Shoffner give Mr. Shoffner $19,168.81, from the retirement accounts, and he then give her, $14,328.14, from the home equity, the chancellor chose to have the respective obligations completely off-set each other.
¶ 14. The legal standard in the division of marital property is the application of the Ferguson factors. The chancellor's amendment to the opinion dated December 31, 2002, clearly states the two Ferguson factors she found applicable in the case, which were, "the degree to which either spouse has withdrawn marital assets, the proof shows Mrs. Shoffner disposed of her retirement income," and "[t]he extent to which the property division may eliminate periodic payments and future friction between the parties." As stated in the Wells case, a chancellor need only consider the applicable Ferguson factors when dividing marital property, therefore Mrs. Shoffner's contention that the chancellor did not make an on-the-record consideration of the Ferguson factors is in error. Wells, 800 So.2d at 1244 (¶ 8). She also contends that the chancellor did not consider the needs of the parties, however, the record indicates that Mrs. Shoffner's income was higher than Mr. Shoffner, and she was charged with a smaller amount of the debt. Finally, as to Mrs. Shoffner's contention that the trial judge erred in declining to consider Mr. Shoffner's possible inheritance of his father's business, she is in error. An inheritance, like an inter vivos gift, is not ordinarily a factor considered in equitable distribution, unless equitable factors exist that dictate otherwise. Traxler v. Traxler, 730 So.2d 1098, 1102 (¶ 18) (Miss.1998). In the case sub judice, the record does not indicate any factors that would suggest considering Mr. Shoffner's possible inheritance was necessary for equitable distribution. The chancellor conducted an appropriate analysis of the Ferguson factors and delineated the two *1251 factors she found relevant in the case sub judice, such a finding is supported by the record.
¶ 15. The chancellor did not abuse her discretion, accordingly there is no merit to this issue.

II.

The Court was manifestly wrong in charging Mrs. Shoffner with any of the Mr. Shoffner's debts.
¶ 16. Mrs. Shoffner contends that the chancellor erred by requiring her to pay $6,486.04 of the credit card debts. She argues that the debt was not marital debt, all the credit cards were in Mr. Shoffner's name, and the chancellor ignored the contention that each party charged debt to their respective cards. She also argues that the chancellor failed to take into consideration that she used her retirement funds to pay credit card debts, and that Mr. Shoffner had the financial ability to pay off all the credit cards, as evidenced by the fact that he had gotten a loan and paid off all the cards.
¶ 17. There is no evidence in the record, aside from Mrs. Shoffner's assertions, that the credit card debt was not marital debt. Mrs. Shoffner produced no evidence that the debt was Mr. Shoffner's alone. Her contention that the cards were in his name alone is of no help to her argument. To the contrary, Mr. Shoffner prepared extensive lists, delineating the charges made to the credit cards, which included: automobile maintenance, holiday gifts for the family, gasoline, meals for the family, etc. The chancellor found these charges were for the benefit of the marriage. The courts in this state have consistently held that expenses incurred for the family, or due to the actions of a family member, are marital debt and should be treated as such upon dissolution of the marriage. See Bullock v. Bullock, 699 So.2d 1205, 1212 (Miss.1997). The chancellor deemed these debts to be marital debts, and such a finding is amply supported by the record. The chancellor did not abuse her discretion, and there is no merit to this issue.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF WASHINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, P.J., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. BRIDGES, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., GRIFFIS AND BARNES, JJ.
BRIDGES, P.J., Concurring in Part and in Result:
¶ 19. Although I agree that the trial court did not commit manifest error in rendering its opinion, I write separately to address what I perceive as shortcomings regarding the chancellor's findings of fact and conclusions of law. In particular, I take issue with the specificity of the chancellor's findings concerning several contested matters that the Shoffners submitted to the court for resolution.
¶ 20. As explained by the majority, the chancellor entered a decree on June 7, 2000, granting the Shoffners' requested no-fault divorce while also reserving jurisdiction to decide a number of contested issues. The Shoffners stipulated the issues in contest to include, in relevant part, child custody payments, requirements for life insurance policies, the ownership and use of the marital home, and the financial liabilities associated with the marital home. The chancellor subsequently addressed these issues in her Order Concerning Findings of Fact, Conclusions of Law and Judgment, dated October 16, 2001. This order is the cause of my concern.
¶ 21. Announcing her resolution of these issues, the chancellor executed the *1252 order in question concluding (1) that Mr. Shoffner must pay $200 per month in child support, (2) that Mr. Shoffner must maintain in full force and effect his life insurance policy of $25,000 and make his daughter the beneficiary to one-half of the proceeds, (3) that Mr. Shoffner shall retain use and possession of the marital residence, and (4) that Mr. Shoffner must pay any and all debts and bills coming due on the mortgage associated with the marital residence. Whether these conclusions were equitable, however, is not apparent on the face of the order because the chancellor failed to provide any facts, analysis, explanation, or reasoning of any kind evincing justification or rationale for the conclusions rendered.
¶ 22. In Ferguson, the Mississippi Supreme Court directed the chancery courts to not only utilize the guidelines enunciated therein when evaluating the division of marital property but "to support their decisions with findings of fact and conclusions of law for purposes of appellate review." Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). Chancellors are afforded broad discretion in applying the Ferguson factors to the unique circumstances presented in each individual case and in fashioning what they deem an equitable division of marital property, but after thorough contemplation of all relevant facts, they have an unequivocal duty to precisely state what they conclude and why. Explicit findings of fact and conclusions of law are critical to appellate review, and upon noticing a growing dereliction by the courts to provide such, I feel compelled to once again stress the importance of complying with this duty.
LEE, P.J., GRIFFIS AND BARNES, JJ., JOIN THIS SEPARATE OPINION.