922 So.2d 53 (2006)
James Vernon JACKSON, Appellant
v.
Geraldine JACKSON, Appellee.
No. 2004-CA-00976-COA.
Court of Appeals of Mississippi.
February 21, 2006.
*55 Kenneth Eugene Floyd, II, Booneville, attorney for appellant.
John A. Ferrell, Booneville, attorney for appellee.
EN BANC.
KING, C.J., for the Court.
¶ 1. James Vernon Jackson appeals the Prentiss County Chancery Court's judgment of divorce entered against him and in favor of his wife of fifty-five years, Geraldine Jackson. Mr. Jackson raises the following issues on appeal:
I. Whether the chancellor erred in granting a divorce on the ground of habitual cruel and inhuman treatment.
II. Whether the chancellor erred in classification, valuation, and division of marital assets.

FACTS
¶ 2. Mr. and Mrs. Jackson were married on December 21, 1949. The couple had five children. In 1963 the couple moved into a house built by Mrs. Jackson's father in Prentiss County. Mrs. Jackson resides in the house to this day. In the early 1960s Mr. Jackson began working at a garment factory in Memphis, where he worked for the next thirty years. At the beginning of his employment at the garment factory, Mr. Jackson stayed in Memphis during the week, but returned to the marital home every weekend. Then he began coming home every other weekend, then once a month, until finally his visits were so sporadic and infrequent that the oldest child testified that Mr. Jackson was "totally absent when we lived at home." Mr. Jackson's support was also sporadic. When he sent home anything at all, it was no more than one hundred dollars per month. Mrs. Jackson was unemployed and stayed home to raise her five children. Mrs. Jackson's parents assisted them financially, and the children obtained jobs at very young ages.
¶ 3. In the early 1990s the garment factory closed and Mr. Jackson moved back into the marital home with Mrs. Jackson. The two occupied separate bedrooms and split the cost of utilities. According to Mrs. Jackson, Mr. Jackson would come home intoxicated four or five nights a week frequently to the point of having soiled his pants. She also testified that Mr. Jackson constantly criticized and cursed her, but did not use physical violence. Four of the Jackson's children also testified on their mother's behalf and substantiated her claims of Mr. Jackson's excessive alcohol use and mental and verbal abuse toward their mother. Mr. Jackson denied in detail nearly every allegation made against him by his wife and children.

ANALYSIS

Habitual Cruel and Inhuman Treatment
¶ 4. In domestic relations cases, a chancellor's findings will not be overturned *56 unless clearly erroneous, manifestly wrong, or an incorrect legal standard was applied. Sproles v. Sproles, 782 So.2d 742, 746(¶ 13) (Miss.2001). Further, in reviewing a divorce decree, this Court must view the facts in the light most favorable to the appellee. Boutwell v. Boutwell, 829 So.2d 1216, 1220(¶ 13) (Miss.2002). In order for a divorce to be properly granted on the ground of habitual cruel and inhuman treatment, the following must be proven by a preponderance of the evidence:
[C]onduct that either (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.
Peters v. Peters, 906 So.2d 64, 68 (Miss.Ct. App.2004) (¶ 13) (quoting Richard v. Richard, 711 So.2d 884, 889 (¶ 22) (Miss.1998)). "The conduct must consist of something more than unkindness or rudeness or mere incompatibility or want of affection." Horn v. Horn, 909 So.2d 1151, 1155(¶ 7) (Miss.Ct.App.2005) (citing Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993)). However, a finding of physical violence is not a prerequisite to establishing habitual cruel and inhuman treatment. Fisher v. Fisher, 771 So.2d 364, 367(¶ 10) (Miss.2000). The cruel treatment must be routine and continuous. Moore v. Moore, 757 So.2d 1043, 1047(¶ 16) (Miss.Ct.App.2000) (citing Mixon v. Mixon, 724 So.2d 956, 959(¶ 9) (Miss. Ct.App.1998)).
¶ 5. The chancellor found that Mr. Jackson's regular drinking binges, foul language, rude and condescending behavior toward Mrs. Jackson and the children, mysterious expenditure of marital funds, and unexplained extended absences rose to the level of habitual cruel and inhuman treatment. These findings were supported by the testimony of Mrs. Jackson and four of the Jacksons' children. Mrs. Jackson testified that Mr. Jackson began drinking heavily shortly after he moved back into the marital home. She testified that Mr. Jackson drank heavily four to five times a week. She testified that she and the children asked Mr. Jackson to undergo an evaluation to determine whether he was in need of treatment for possible alcoholism, but Mr. Jackson refused. The four Jackson children who testified each substantiated their mother's claim of Mr. Jackson's excessive drinking. In addition to general testimony describing Mr. Jackson's demeanor when he would come home drunk, the children testified to specific examples they remembered from seeing their father drunk. One child expressed a concern for Mr. Jackson being drunk in front of his grandchildren. Another child recounted a time where she and her mother had to go pick up Mr. Jackson from the VFW because he was too intoxicated to drive home. The children also testified that Mr. Jackson's drinking may have been the reason he missed one daughter's graduation ceremony and another daughter's wedding rehearsal dinner.
¶ 6. Each child also testified as to the verbal and mental abuse Mr. Jackson inflicted upon Mrs. Jackson. The children described Mr. Jackson as cursing their mother, treating her "like an idiot," and berating her for attending church. Each of the Jacksons' children was asked if he or she believed that their parents could go on living together as husband and wife, and each child replied in the negative. The oldest child stated that she believed her mother would suffer a nervous breakdown if she continued to live with Mr. Jackson.
*57 ¶ 7. The chancellor found as credible Mrs. Jackson's testimony that Mr. Jackson left the house early every morning and stayed out all day and all night, and many times did not come home until the next morning, with little or no explanation. The chancellor, based largely upon the testimony of Mr. Jackson, found that he mysteriously spent marital funds. Mr. Jackson testified that when he worked in Memphis he made about three hundred dollars per week, paid no rent to live in an acquaintance's apartment, and contributed minimally to the upkeep of the marital home.
¶ 8. After examining the testimony, we cannot say that the chancellor manifestly erred in finding that the course of conduct in which Mr. Jackson engaged during the twelve years prior to his separation from Mrs. Jackson amounted to habitual cruel and inhuman treatment. "There are many kinds of acts such as wilful failure to support, verbal abuse, neglect, and the like which, if taken alone will not constitute cruelty, but when taken together will manifest a course of conduct as a whole which may amount to cruelty." Rakestraw v. Rakestraw, 717 So.2d 1284, 1288(¶ 10) (Miss.Ct.App.1998). The collective action of Mr. Jackson falls within that category. We therefore affirm the chancellor's award to Mrs. Jackson of a divorce based on the ground of habitual cruel and inhuman treatment.

Equitable Distribution
¶ 9. Mr. Jackson claims that the chancellor erred in her classification, valuation, and division of property. This Court reviews a chancellor's division of marital property under an abuse of discretion standard. Shoffner v. Shoffner, 909 So.2d 1245, 1250 (Miss.Ct.App.2005). A chancellor's first step in equitable distribution is classifying property as marital or non-marital property. Ericson v. Tullos, 876 So.2d 1038, 1040(¶ 9) (Miss.Ct.App. 2004). Next, the chancellor must assign value to and equitably divide the property, taking into consideration each parties' separate property. Id. "If there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done." Id. (quoting Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1995)).

Classification
¶ 10. The chancellor found the following property to be marital property: the marital home, various household furniture and appliances, a tractor and various tools, three motor vehicles, Mrs. Jackson's retirement account, and each parties' checking account. The chancellor found a long list of household items which Mrs. Jackson's children gave her as gifts to be Mrs. Jackson's separate property.[1] The chancellor also classified as Mr. Jackson's separate property several items that were given to him as gifts from his children.
¶ 11. Mr. Jackson cites Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss. 1994) for the contention that the items classified as Mrs. Jackson's separate property were used for family purposes and should therefore be deemed marital property. However, this Court has previously *58 relied on Johnson for the proposition that, "Property obtained by inheritance or by gift is non-marital property and not subject to equitable distribution." Brock v. Brock, 906 So.2d 879, 887(¶ 48) (Miss.Ct. App.2005) (citing Johnson, 650 So.2d at 1287). Nonetheless, non-marital property "may be converted into marital assets if they are commingled with marital property or utilized for domestic purposes, absent an agreement to the contrary." Boutwell v. Boutwell, 829 So.2d 1216, 1221(¶ 20) (Miss.2002) (emphasis added) (citing Heigle v. Heigle, 654 So.2d 895, 897 (Miss. 1995); Johnson, at 1286). Mrs. Jackson necessarily utilized the gifts from her children for domestic purposes because all of the gifts were household furnishings. However, Mr. Jackson, who did not reside in the marital home for thirty years, disavowed any interest in these items, testifying:
Q. Mr. Jackson, do I understand that you want money out of the house, the equipment, and your TV; is that what I understand
A. That's what I want.
Q. you're asking for?
A. That's all.
Q. All right. Thank you.
A. She can have the rest of it.
¶ 12. For these reasons, we affirm the chancellor's classification of marital and non-marital property.

Valuation
¶ 13. Mr. Jackson also argues that the chancellor erred in her valuation of the Jackson's motor vehicles. The chancellor found that the 1983 Oldsmobile Cutlass had a fair market value of $1,500, the 1987 Oldsmobile Cutlass had a fair market value of $2,500, and the 1979 Ford pickup truck had a fair market value of $2,500. Specifically, Mr. Jackson argues that the chancellor took these figures from Mrs. Jackson's Rule 8.05 of the Uniform Chancery Court Rules financial statement, even though his financial statement valued the 1983 Oldsmobile and the 1979 Ford at $500 apiece.
¶ 14. A determination of the value of the parties' assets is a prerequisite to equitable distribution. Dunaway v. Dunaway, 749 So.2d 1112, 1118(¶ 14) (Miss.Ct. App.1999) (citing Ferguson v. Ferguson 639 So.2d 921, 929 (Miss.1994)). However, "it is incumbent upon the parties, and not the chancellor, to prepare evidence touching on matters pertinent to the issues to be tried." Id. The only evidence of the value of the Jackson's vehicles presented to the chancellor were the values assigned to the vehicles in both Mr. and Mrs. Jackson's financial statements. Although Mr. and Mrs. Jackson's personal valuations of the vehicles was fairly divergent, we decline to find that the chancellor was in error for accepting Mrs. Jackson's assignment of value over Mr. Jackson's assignment.

Equitable Division
¶ 15. Mr. Jackson argues that the chancellor erred in her division of the marital property. He argues that the chancellor (1) failed to take into account Mr. Jackson's financial contribution toward remodeling of and certain repairs made to the marital home; (2) erred in her finding that Mrs. Jackson made active contributions to the maintenance of the marital home; (3) erred in her finding that Mr. Jackson made minimal financial contributions toward the maintenance and upkeep of the marital home; (4) erred in finding that Mrs. Jackson used her earnings on the maintenance and upkeep of the marital home; (5) erred in her finding that Mr. Jackson spent the bulk of his earnings on his ventures away from the family; and (6) erred in considering the repairs that needed to be made on the marital home.
*59 ¶ 16. A chancellor must consider the following eight factors when conducting an equitable distribution of marital property:
(1) Substantial contribution to the accumulation of the property, including these factors: direct or indirect economic contribution to the acquisition of the property, contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage, and contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets,
(2) the degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise,
(3) the market value and the emotional value of the assets subject to distribution,
(4) the value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse,
(5) tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution,
(6) the extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
(7) the needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
(8) any other factor which in equity should be considered.
Cosentino v. Cosentino, 912 So.2d 1130, 1132(¶ 11) (Miss.Ct.App.2005) (quoting Ferguson 639 So.2d at 928). "When reviewing a chancellor's judgment in property division we are not to conduct a Ferguson analysis anew, but are to review the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion." Shoffner v. Shoffner, 909 So.2d 1245, 1250 (Miss.Ct. App.2005) (citing Wells v. Wells, 800 So.2d 1239, 1243(¶ 8) (Miss.Ct.App.2001)).
¶ 17. The chancellor applied the Ferguson factors to the evidence presented and made the following findings. Under the first factor, the chancellor found that although Mr. Jackson's earnings were used to purchase the marital home, he provided few funds toward its maintenance and upkeep. Instead, Mrs. Jackson, with the help of the children, was responsible for the majority of the upkeep on the house. The chancellor found that Mr. Jackson's extended absence from the marital home required Mrs. Jackson to work outside the home while single-handedly raising the five children. The chancellor also found that Mrs. Jackson earned a 401K account through her employment. The chancellor also found that Mr. Jackson made minimal financial contributions to the family and played the leading role in the demise of the marriage.
¶ 18. Under the second factor, the chancellor found that Mr. Jackson worked out of town for years, but failed to adequately support his family. The chancellor found that Mr. Jackson did assist with utility payments and various other expenses on occasion. The chancellor also found Mrs. Jackson solely satisfied debts for which Mr. Jackson was equally liable, and that Mrs. Jackson utilized her earnings to support the family and maintain *60 the marital home, while Mr. Jackson spent the bulk of his earnings on ventures away from the family.
¶ 19. Under the third factor, the chancellor determined the fair market value of the parties' assets based on the evidence provided by each party. Regarding any emotional value of the assets, the chancellor found that Mrs. Jackson's emotional ties to the marital home were much stronger than Mr. Jackson's, as Mrs. Jackson continuously lived in the home and raised her family there, while Mr. Jackson did not.
¶ 20. The chancellor found that the fourth factor was inapplicable. Under the fifth factor, the chancellor found that no debts were owed on the marital assets, and that no evidence of tax consequences was presented. Under the sixth factor, the chancellor found that due to the age of the parties and in light of the division of the property, it would be inappropriate to award periodic alimony. Under the seventh factor, the chancellor found that both parties were retired; Mrs. Jackson's monthly income was $664 per month; her expenses exceeded her income; Mr. Jackson's income was $773 per month plus any revenue he earned from odd jobs he performed; Mr. Jackson was in poor health; and both parties would be on unsure financial footing due to their ages and limited incomes. As to the final factor, the chancellor considered repairs that were required to be made on the marital residence at the time of the divorce proceeding.
¶ 21. After weighing the Ferguson factors, the chancellor divided the marital property as follows. Mrs. Jackson was awarded the exclusive use, possession, and ownership of the marital home and adjoining property; the 1987 Oldsmobile Cutlass; her IRA account; and various household furnishings. Mr. Jackson was awarded an equitable lien in the amount $14,000 on the marital home, which represents twenty percent of the home's fair market value; the 1983 Oldsmobile Cutlass; the 1979 Ford pickup truck; the tractor and various equipment; two trailers; the riding lawnmower and a tiller; and one television.
¶ 22. We find that the chancellor conducted a detailed Ferguson analysis, and made a division of the marital property, which was supported by substantial credible evidence. Therefore, we affirm the chancellor's equitable division of the martial property.
¶ 23. THE JUDGMENT OF THE PRENTISS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] The items listed as Mrs. Jackson's separate property include: two coffee tables, two end tables, a buffet table, a china cabinet, a dining table, six chairs, five oriental rugs, two chandeliers, a kitchen table with chairs, a stove and vent hood, a dishwasher, two refrigerators, a braided rug, a light fixture, a sofa table, an entertainment center, a sofa and loveseat, a recliner, a television, a VCR, a jewelry chest, a bedroom suite, patio furniture, shutters, ceiling fans, a washer and dryer, and lamps.