ROBERTS, J.,
for the Court:
¶ 1. Johnny M. Jenkins and Kathryn Martello Jenkins agreed to a divorce based on irreconcilable differences. The Madison County Chancery Court’s resolution of two disputed issues are central to this appeal. Kathryn claims the chancellor erred by assigning her the entire balance of the debt from one credit card. Kathryn’s second issue on appeal involves the chancellor’s distribution of Kathryn and Johnny’s jointly owned business. The chancellor found that Kathryn had dissipated marital assets through her gambling losses at' casinos. The chancellor then deducted Kathryn’s dissipation of assets from Kathryn’s share of the business and awarded Kathryn a judgment for that amount. The chancellor ordered Johnny to pay Kathryn in monthly installments. The chancellor further held that Kathryn could assert a lien against the business’s real property or “take any other collection remedies provided by law” if Johnny missed a monthly payment. According to Kathryn, the chancellor erred by restrict *200 ing her rights as a judgment debtor. After careful consideration, we affirm the chancellor’s judgment as it pertains to allocation of the credit-card debt. However, we reverse that portion of the chancellor’s judgment that operates as a restriction of Kathryn’s rights as a judgment debtor and render that portion of the chancellor’s judgment void.
FACTS AND PROCEDURAL HISTORY
¶ 2. Johnny and Kathryn were married on January 4, 1991. They had two children during their eighteen-year marriage. Johnny initially filed a complaint for a divorce based on habitual cruel and inhuman treatment, and Kathryn reciprocated with a counterclaim for divorce based on three separate fault-based grounds. However, they each later withdrew their fault-based divorce claims and agreed to a divorce based on irreconcilable differences.
¶3. Johnny and Kathryn submitted-the following contested issues to the chancellor: child custody, child support, and equitable distribution of their marital assets and marital debt. The chancellor ultimately awarded physical custody of the children to Johnny, subject to Kathryn’s visitation rights. The chancellor also ordered Kathryn to pay Johnny $326 each month in child support. The chancellor also awarded Kathryn approximately $70,000 from the division of the equity in the marital home.
¶ 4. As for Kathryn and Johnny’s business, KMJ, Inc. d/b/a Automuff Discount Muffler, the chancellor found that, including KMJ’s Jackson, Mississippi, real estate, KMJ had an appraised value of $251,000. The chancellor found that Kathryn had dissipated $50,000 in marital assets through gambling losses. Although the chancellor did not specifically state that Kathryn’s share of KMJ was $165,000, the chancellor held that Kathryn’s dissipation of assets would be offset against Kathryn’s share of KMJ. The chancellor then awarded Kathryn a judgment against Johnny in the amount of $115,000-repre-senting Kathryn’s share of KMJ. The chancellor further stated as follows:
Johnny shall pay Kathryn a minimum of $500 per month until the entire amount is paid in full. If Johnny fails to make the minimum payment any given month, Kathryn may assert a lien against [KMJ’s real property] in Jackson, Mississippi[,] or take any other collection remedies provided by law.
¶ 5. Kathryn filed a motion for reconsideration. Kathryn interpreted the chancellor’s treatment of the KMJ judgment as a restriction of her rights as a judgment debtor. Kathryn filed a motion for “reconsideration, JNOV or new trial.” The chancellor heard Kathryn’s motion and “amend[ed] the [judgment] to reflect that Kathryn ... may immediately assert a vendor’s lien against the real property of KMJ, Inc. located [in] ... Jackson, [Mississippi], The vendor’s lien shall not preclude any other collection remedies available to [Kathryn] under the law should [Johnny] miss a payment.” Aggrieved, Kathryn appeals. We affirm the chancellor’s judgment as it pertains to allocation of the credit-card debt. However, we reverse that portion of the chancellor’s judgment that operates as a restriction of Kathryn’s rights as a judgment debtor and render that portion of the chancellor’s judgment void.
STANDARD OF REVIEW
¶ 6. When reviewing a decision of a chancellor, this Court reviews the chancellor’s factual findings for an abuse of the chancellor’s discretion. Mabus v. Mabus, 890 So.2d 806, 810 (¶ 14) (Miss.2003). We will not disturb the chancellor’s factual *201 findings unless the chancellor was manifestly wrong, clearly erroneous, or the chancellor applied an improper legal standard. Id. However, we review questions of law de novo. McNeil v. Hester, 753 So.2d 1057, 1063 (¶ 21) (Miss.2000).
ANALYSIS
I. CREDIT-CARD DEBT
¶ 7. The chancellor held that Kathryn would be solely responsible for paying the entire $7,312 balance of a Visa credit card. Johnny argues that the chancellor’s decision that Kathryn pay the entire balance of that credit-card debt is part of the chancellor’s overall equitable division of the marital assets and the debts acquired during their marriage. Citing Wells v. Wells, 800 So.2d 1239, 1243 (¶ 7) (Miss.Ct.App.2001), Johnny argues that “equitable distribution does not mean ‘equal distribution.’ ” According to Johnny, the chancellor offset the credit-card debt from other considerations incident to equitable distribution.
¶ 8..Kathryn and Johnny disagreed that the credit-card debt was a marital debt. Johnny testified that he and Kathryn were “getting sued by Trustmark Bank for nonpayment of a credit card debt.” Johnny also testified that he did not “know anything about the credit card” and that he “personally did not have” a Trustmark Visa card. According to Johnny, he did not know that Kathryn had obtained the credit card. Johnny testified that he did not agree to be personally liable for the credit card.
¶ 9. Kathryn testified regarding the credit-card debt as follows:
Q. With regard to the lawsuit for the credit card that has been introduced as an exhibit in this action, you and Johnny have been sued for $7,312.10.
A. This debt was a personal credit card that Johnny and I had, and it wasn’t that much when I left the house.
Q. How would that debt be disposed of?
A. It should be split in half, right down the middle. He’s just as responsible and charged on it like I did.
Q. All right. That was used for what purpose.
A. The credit card. This was a personal credit card. As I recall, he bought me a ring on that credit card. . .
[[Image here]]
Q. Are you suggesting that if you are successful in negotiating that that you and Johnny split this deb1>—
A. Yes.
Q. —whatever amount it ends up being?
A. Yes. It was ' incurred during our marriage.
¶ 10. Kathryn did not submit any statements or other documentary evidence to demonstrate that the credit-card debt was incurred for expenses that benefitted the marriage. Aside from Kathryn’s testimony that Johnny had purchased a ring with the credit card, there was absolutely no evidence regarding what else was purchased with the credit card. During examination by the chancellor, Kathryn testified that she still owned the ring that was purchased with the credit card. Kathryn also testified that she thought Johnny had paid $2,000 for the ring. The additional balance, totaling more than $5,000, is entirely unmentioned in the record.
¶ 11. “[E]xpenses incurred for the family, or due to the actions of a family member, are marital debt and should be treated as such upon dissolution of the marriage.” Shoffner v. Shoffner, 909 So.2d 1245, 1251 (¶ 17) (Miss.Ct.App.2005). Even if we assume, for the sake of discussion, that the scant evidence in the record *202 satisfied Kathryn’s burden to prove her assertion that the credit-card debt is a marital debt, that does not end the analysis. The chancellor could have accounted for the decision that Kathryn would be solely responsible for the credit-card debt by providing Kathryn more favorable treatment during the division of KMJ. The chancellor’s judgment can only be interpreted as initially awarding Kathryn $165,000 of the business’s total appraised value of $251,000. In other words, the chancellor awarded Kathryn $165,000 of KMJ’s appraised value and awarded Johnny the remaining value of $86,000. Although the chancellor only awarded Kathryn a judgment of $115,000 for her share of KMJ, it is essential to note that the chancellor deducted Kathryn’s dissipation of $50,000 in marital assets from Kathryn’s share of KMJ. Accordingly, the chancellor could have only awarded Kathryn a final judgment of $115,000 if the chancellor originally awarded Kathryn $165,000 of KMJ’s appraised value of $251,000.
¶ 12. The chancellor’s decision that Kathryn would be solely responsible for the credit-card debt could have been based on the obvious favorable treatment that Kathryn received during the chancellor’s division of KMJ. The Mississippi Supreme Court has held that “there is no automatic right to an equal division of jointly-accumulated property, but rather, the division is left to the discretion of the court.” Draper v. Draper, 627 So.2d 302, 305 (Miss.1993). Considering the chancellor’s equitable distribution, as a whole, we find that the chancellor acted within her discretion when she held that Kathryn was solely responsible for the $7,312 Visa credit-card debt. Accordingly, we find no merit to this issue.
II. KATHRYN’S INTEREST IN KMJ
¶ 13. Kathryn argues that the chancellor abused her discretion when she prohibited Kathryn from collecting on the $115,000 judgment, which represents Kathryn’s equitable interest in KMJ. The chancellor ordered Johnny to pay Kathryn at least $500 per month until he had satisfied the balance of the judgment. According to Kathryn, the chancellor did not have the authority to preclude her from attempting to execute on the judgment in her favor. We agree.
¶ 14. Mississippi Code Annotated section 11-5-81 (Rev.2002) provides that: “Whenever the court shall render an order, judgment, or decree for the payment of money against any ... other party litigant therein, a compliance with such order, judgment or decree may be enforced by process of fieri facias or garnishment.” In Peeples v. Yarbrough, 475 So.2d 1154, 1158-59 (Miss.1985), a chancellor imposed a schedule of payments to satisfy a judgment and further placed conditions on the order that operated as a restriction of the judgment debtor’s right to satisfy the judgment through garnishment proceedings. The chancellor in Peeples did so because the chancellor was of the opinion that requiring the judgment creditor to pay more than the amount set forth in the schedule of payments “would only make the situation worse than it already was.” Id. at 1159. The Mississippi Supreme Court held that the chancellor had abused his discretion in circumventing the judgment debtor’s statutory right pursuant to section 11-5-81 to collect the judgment through garnishment. Id. The Peeples court also recognized that, in Walters v. Walters, 383 So.2d 827, 829 (Miss.1980), the supreme court stated that a “similar prohibition” was unenforceable because “the appellant [was] being denied the right to attempt to collect the judgment through the normal collection processes, that is, writ of garnishment or writ of execution, *203 or even the right to negotiate a mutually satisfactory plan of payment with the ap-pellee.” Peeples, 475 So.2d at 1159. Accordingly, the supreme court “reverse[d] as manifest error that portion of the order relating to the appellant’s right to pursue enforcement of her judgment and ... rendered] the question by voiding that provision.” Peeples, 475 So.2d at 1159. However, the supreme court further held that “[t]he order remains in effect ordering ap-pellee to pay $150.00 current child support and $50.00 toward the arrearage judgment.” Id.
¶ 15. Following the precedent set forth in Peeples, we find that the portion of the chancellor’s order that prohibited Kathryn’s right to execute the judgment awarded by the chancellor operates as a violation of Kathryn’s rights as set forth in section 11-5-81. However, we do not disturb the portion of the chancellor’s order as it relates to the schedule of payments. Stated differently, we are aware of no restriction on the chancellor’s authority to establish a schedule of payments, and Johnny shall not be held in contempt as long as he obeys the chancellor’s order. However, the chancellor did not have the authority to restrict Kathryn’s rights to seek satisfaction of the judgment in the manner reflected in section 11-5-81. We, therefore, “reverse as manifest error that portion of the order relating to [Kathryn’s] right to pursue enforcement of her judgment” and render “the question by voiding that provision.” See Peeples, 475 So.2d at 1159.
¶ 16. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE PARTIES.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR.