# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-00444-COA

KIMBERLANA ELKINS                                                APPELLANT

v.

ROBERT D. ELKINS                                                 APPELLEE

DATE OF JUDGMENT:               02/10/2015
TRIAL JUDGE:                    HON. JAMES B. PERSONS
COURT FROM WHICH APPEALED:      HANCOCK COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         KIMBERLANA ELKINS (PRO SE)
ATTORNEY FOR APPELLEE:          FRANK PHILIP WITTMANN IV
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    AFFIRMED - 02/06/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.

### BARNES, J., FOR THE COURT:

¶1. Robert and Kimberlana Elkins were granted a judgment of divorce by the Hancock County Chancery Court on February 10, 2015. Robert filed a motion to reconsider the awards for contempt and attorney's fees to Kimberlana. Granting Robert's motion in part, the chancery court modified the award for contempt. The award of attorney's fees was upheld. Asserting numerous issues, Kimberlana filed an appeal of the chancery court's judgment of divorce, including the chancellor's modification of the contempt award.

¶2. Finding no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶3. Robert and Kimberlana were married on September 11, 1999. The couple had two

children: a female, born in 1998; and a male, born in 2008. The couple separated on January 31, 2010, and Kimberlana filed a complaint for divorce against Robert on July 13, 2010, citing irreconcilable differences.

¶4. On July 22, 2011, the Hancock County Chancery Court entered a temporary order, granting Kimberlana temporary custody of the minor children and exclusive use of the marital home. Robert was ordered to pay $350 in monthly temporary child support, the children's medical expenses, plus the mortgage, maintenance, and expenses for the marital residence. The issue of alimony was held in abeyance. Robert filed a motion to set aside the temporary order on August 16, 2011, asserting he was never notified of the court hearing regarding the temporary support.

¶5. On August 25, 2011, Kimberlana filed a motion for contempt of court, claiming Robert was $3,150 in arrears for child support and $8,659.95 in arrears for the mortgage and home maintenance. On November 15, 2011, the parties appeared before the chancery court, agreeing to have the court review and resolve all claims. But although Robert filed a motion to enforce the agreed judgment of divorce on December 29, 2011, the proposed property-settlement and child-custody agreement was never executed or filed. Kimberlana subsequently filed a handwritten property-settlement agreement, requesting money from an alleged inheritance to be received by Robert.

¶6. On February 7, 2012, Kimberlana filed a second motion for contempt, reasserting her argument that Robert failed to pay the mortgage and temporary child support. She filed another motion for citation of contempt on July 2, 2012, claiming Robert "ha[d] failed to

2

meet his financial obligations under the [t]emporary [o]rder and ha[d] placed the marital home at risk for foreclosure" and that his additional failure to pay support and expenses had caused her and the minor children financial hardship.

¶7.    Kimberlana filed an amended complaint for divorce on March 11, 2013, asserting claims of adultery; habitual cruel and inhuman treatment; and willful, continued, and obstinate desertion for one year; or in the alternative, irreconcilable differences.  She requested child support, the children's educational (college) expenses, alimony, and exclusive use and ownership of the marital home.  She filed a second amended complaint on May 1, 2013.  Robert filed no response to the complaints.

¶8.    Kimberlana filed a motion for emergency relief, modification, and other relief, on July 26, 2013, requesting an increase in child support and for Robert to pay "all household expenses . . . to include travel to and from [their daughter's] medical providers," as a recent medical condition had resulted in "excessive medical expenses" for the daughter.  Robert responded with a motion to set aside the temporary order, again claiming he had not received notice of the hearing.  On December 17, 2013, the chancery court found Robert to be in contempt of the chancery court's temporary order of July 22, 2011, "but not in wilful and contumacious contempt."  Because the evidence reflected Robert's inability to pay the temporary support, the court granted an equitable lien on the marital residence for the total arrearage of $42,604.47.  Noting a substantial and material change in circumstances since the temporary order, the chancellor also modified the child support to $415.15 per month, making it retroactive to the date of the filing of the motion for emergency relief.

3

¶9.     On February 10, 2015, the chancery court entered a judgment of divorce. The court granted Kimberlana a divorce on the ground of adultery, noting that although Robert did not admit to adulterous behavior prior to the couple's separation, he had "openly admitted to extramarital relations after the date of separation." The chancellor awarded joint legal custody to both parents and primary physical custody to Kimberlana. As to child support, the court determined Robert's monthly adjusted gross income to be $1,904.33 and ordered him to pay $381 per month in accordance with the statutory child-support guidelines. *See* Miss. Code Ann. § 43-19-101 (Rev. 2015). As the marital residence was subject to a mortgage and an unsecured (home disaster) loan through the Small Business Administration (SBA),[1] the chancery court ordered that the home be sold and the proceeds used to pay off the debts. As to Kimberlana's motion for contempt, the court determined that the total arrearage owed by Robert was $65,895.96. He ordered Robert to pay $250 per month for any arrearage due after the proceeds of the sale of the house had been applied to the arrearage. The chancellor denied Kimberlana's request for alimony and homeschooling expenses of $1,500 per year for their daughter.

¶10.    Robert filed a motion on February 18, 2015, asking the court to reconsider the awards of contempt and attorney's fees. Kimberlana filed a notice of appeal from the chancery court's judgment of divorce on March 6, 2015.[2] On June 5, 2015, the chancery court ruled

---

[1] The couple took out the loan to refurbish the home due to damage from Hurricane Katrina.

[2] While ordinarily the filing of a notice of appeal comes after the trial court's disposition of post-trial motions, the comment to Mississippi Rule of Appellate Procedure 4(d) provides:

on Robert's motion for reconsideration, finding that the chancery court had no authority to order Robert to pay "temporary child or spousal support because no such request was made by [Kimberlana] in her initial complaint." Thus, the court determined that the temporary order was "void ab initio" and granted Robert's motion in part, deducting $42,604.47 from the arrearage owed by Robert for support. However, it denied the motion with respect to the remaining arrearage ($23,291.49) and the award of $3,700 in attorney's fees to Kimberlana.

¶11. Kimberlana argues on appeal that the chancery court erred: (1) by failing to consider Robert's extra-marital affairs in its determination of the equitable distribution of the marital assets; (2) in calculating Robert's income for the purposes of child support, specifically its failure to consider Robert's alleged inheritance; (3) by decreasing the amount of child support from the December 17, 2013 order; (4) in not ordering Robert to pay tuition for the daughter's online-school program; (5) by not awarding Kimberlana the marital residence; (6) by not awarding Kimberlana lump-sum or rehabilitative alimony; (7) in modifying the award of contempt in its order on Robert's motion for reconsideration; (8) by awarding Kimberlana the trailer from the couple's former business; and (9) in not ordering Robert to acquire and

[A] notice of appeal filed before the disposition of a specified post trial motion will become effective upon disposition of the motion. A notice filed before the filing of one of the specified motions or after the filing of a motion but before its disposition is, in effect, suspended until the motion's disposition, whereupon the previously filed notice effectively places jurisdiction in the Supreme Court.

M.R.A.P. 4(d) cmt. Kimberlana filed a subsequent Mississippi Rule of Civil Procedure 60(b) motion to set aside the judgment on August 6, 2015. The chancery court denied this motion for lack of jurisdiction, noting Kimberlana's notice of appeal filed in March. Kimberlana has not appealed the court's denial of her Rule 60(b) motion; so we will not address the court's ruling on that motion.

5

maintain life-insurance policies for the children.[3]

¶12.   Finding no error, we affirm.

## STANDARD OF REVIEW

¶13.   A chancellor's decision is reviewed for abuse of discretion. *Jenkins v. Jenkins*, 60 So. 3d 198, 200 (¶6) (Miss. Ct. App. 2011).  "We will not disturb the chancellor's factual findings unless the chancellor was manifestly wrong, [or] clearly erroneous, or the chancellor applied an improper legal standard."  *Id.* at 200-01 (¶6).  Questions of law, however, are reviewed de novo.  *Id*. at 201 (¶6) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000)).

## DISCUSSION

**I.     Whether the chancellor erred by not considering Robert's extra-marital affairs in the equitable distribution of the marital assets.**

¶14.   Kimberlana contends the chancellor failed to account for Robert's extra-marital affairs when making his determination of the equitable distribution of the marital assets.  She states that Robert had told her that he had been tested for AIDS, and she suffered emotional harm as a result.  This issue, however, is procedurally barred as Kimberlana has cited no authority for her argument.  The "failure to cite any authority is a procedural bar, and a reviewing court is under no obligation to consider the assignment."  *In re Estate of Forrest*, 165 So. 3d 548, 550 (¶7) (Miss. Ct. App. 2015) (quoting *Norwood v. Miss. Dep't of Emp't Sec.*, 105 So. 3d

---

[3] Kimberlana was represented by counsel during the majority of the trial proceedings below.  On February 15, 2013, the chancellor granted counsel's motion to withdraw, and Kimberlana retained new counsel.  After the judgment of divorce was entered, Kimberlana proceeded pro se.

408, 410 (¶5) (Miss. Ct. App. 2012)). Notwithstanding any bar, we find no error. As our Court has noted: "[C]hancellors should not view equitable distribution as a means to punish the offending spouse for marital misconduct. . . . Rather, marital misconduct is a viable factor entitled to be given weight by the chancellor when the misconduct places a burden on the stability and harmony of the marital and family relationship." *Bond v. Bond*, 69 So. 3d 771, 773 (¶6) (Miss. 2011) (citing *Carrow v. Carrow*, 642 So. 2d 901, 904 (Miss. 1994)). As noted previously, the only evidence of Robert's adultery occurred after the couple's separation; thus, the chancery court did not err in refusing to give weight to this factor as there was no evidence that it harmed the marital relationship.

## II.     Whether the chancery court properly calculated Robert's income.

¶15.    The chancellor determined that Robert's monthly adjusted gross income was $1,904.33. Kimberlana contends the chancery court's findings as to Robert's income were erroneous, and Robert falsified his Rule 8.05 financial statement. The majority of Kimberlana's assignments of error on appeal concern her claim that Robert had other income not included in the court's findings, specifically an inheritance from his deceased father, including a Franklin-Templeton savings account.

¶16.    Addressing Kimberlana's assertion that Robert had an inheritance from the estate of his deceased father, the chancellor found "no evidence that Robert ha[d] any interest in his late father's estate." Robert's sister had legal title to all of their father's assets; so Robert "has no present or enforceable right to any assets comprising his father's estate." The chancery court also found no evidence to establish that a Franklin-Templeton account

7

existed. At trial, Robert testified that no such account existed. Patricia Davis, his mother, testified that Robert's father did have funds at Franklin-Templeton, but those funds were payable to Robert's sister, Lindsey, upon his death. When counsel for Kimberlana attempted to introduce a report on the accounts purportedly created by Davis, the chancellor determined:

> [T]he basic issue that I've got to decide is [if it is] marital property subject to equitable distribution, and I don't think it is. And I don't think that [Robert] could be charged in the absence of proof now unless Lindsey came in and said, I have another letter from my father that says when he asks for $1,000, I have to give him $1,000. . . . You see, there's no present vested interest in the corpus of this trust. . . . It's just that in the absence of any document that goes well beyond this, [Robert] has no present interest in any property that may have passed to Lindsey[.] . . . In other words, I could not order Lindsey to give any money to [Kimberlana] here.

We find no abuse of discretion in the court's findings. There was no credible evidence presented at trial that Robert had any present vested interest in any inheritance.

¶17. Therefore, we find no error in the chancery court's determination of Robert's income, and any arguments raised by Kimberlana as to the existence of an inheritance are without merit.

### III. Whether the chancery court erred in decreasing the amount of child support from its December 17, 2013 order.

¶18. In the December 17, 2013 order, the chancery court increased the amount of child support to $415.15. In the judgment of divorce, the court noted that Robert's adjusted gross income was $1,904.33 per month and, in accordance with section 43-19-101, determined that his child-support obligation was $381 (20% of $1,904.33). Kimberlana argues that Robert had the necessary income to pay $800 in child support.

8

¶19. As already noted, we find no evidence that the court's calculation of Robert's income was incorrect, and the calculation of child support was within the statutory guidelines of section 43-19-101. Accordingly, we find no error in the chancery court's findings.

**IV. Whether the chancery court erred by not ordering Robert to pay $1,500 for the daughter's school tuition.**

¶20. Kimberlana testified that the couple's daughter had been homeschooled using an online program since March 2014 because of her medical issues with fibromyalgia and obsessive-compulsive disorder.[4] The chancery court denied Kimberlana's request that Robert pay $1,500 a year for the daughter's homeschooling, finding this would be a "deviation from the child[-]support guidelines." He further noted that neither party could afford this educational expense; nor had either parent addressed whether accommodations could be made for the child with the local school administration.

¶21. Kimberlana asserts that it was error for the chancellor not to award her this money for the daughter's educational expenses, considering the child's health issues (fibromyalgia). Citing section 43-19-101(6), she argues that "[a]ll orders involving support of minor children, as a matter of law, shall include reasonable medical support." But this issue involves the child's educational expenses, not her medical expenses; so we find this statute inapplicable. As already stated, the chancellor properly determined the amount of child support owed by Robert in accordance with the guidelines in section 43-19-101. Ordinarily, "[p]re-college tuition is considered part of child support, not an extraordinary expense," and

---

[4] According to Kimberlana, the child has since graduated high school and is attending Tulane University.

a chancellor may not require a parent to pay tuition over and above the statutory percentage "without a written or specific finding . . . as to why the deviation is needed." *Moses v. Moses*, 879 So. 2d 1043, 1048 (¶14) (Miss. Ct. App. 2004) (citing *Southerland v. Southerland,* 816 So. 2d 1004, 1006 (¶11) (Miss. 2002) & § 43-19-101(2)). As Kimberlana has provided no basis for the chancellor to make such a finding, we find no abuse of discretion in the chancellor's ruling on this issue.

V. **Whether the chancery court erred by not awarding Kimberlana complete ownership of the marital home.**

¶22. Noting that the marital home was subject to a mortgage and an unsecured loan through SBA, the chancery court ordered that the home be sold and the proceeds be used to pay off the debts. He further noted that neither party "can afford to pay the liabilities and other expenses associated with it." Kimberlana argues the chancellor erred in denying her "exclusive use and ownership" of the marital home, because she claims that she made all but one or two of the mortgage payments on the home.

¶23. "The [c]hancery [c]ourt has authority, where equities so suggest, to order a fair division of property accumulated through the joint contributions and efforts of the parties, and the equitable division is left to the chancellor's discretion unless there is an abuse of discretion." *Berryman v. Berryman*, 907 So. 2d 944, 947-48 (¶14) (Miss. 2005) (citation and internal quotations omitted). There was substantial evidence presented by both parties that, even during the marriage, the couple struggled to pay the mortgage and loan payments on the home. As the chancery court noted in its judgment:

The intermittent financial assistance of family, principally from Robert's

10

mother and stepfather, has been necessary to avoid multiple foreclosure threats of the marital home where Kimberlana and the children live, to pay utilities for the marital home, to provide Robert with a vehicle necessary for his transportation to and from work; and extra money from time to time for the children's clothing, educational, medical and dental needs.

Accordingly, we find no abuse of discretion in the court's order to sell the marital home.

**VI. Whether the chancery court erred in not awarding Kimberlana $50,000 in lump-sum or rehabilitative alimony.**

¶24. The chancery court denied Kimberlana's request for alimony, finding that Robert's income was insufficient to pay alimony "after he pays child support, his minimal living expenses, and other sums required to be paid by him in this judgment." Kimberlana claims that the failure to award her alimony would result in financial hardship.

¶25. The supreme court has held: "In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust, or grossly inadequate as to evidence an abuse of discretion." *Rogillio v. Rogillio*, 57 So. 3d 1246, 1248 (¶7) (Miss. 2011) (citation omitted). Kimberlana cites *Jenkins v. Jenkins,* 278 So. 2d 446, 449 (Miss. 1973), a case in which the supreme court held that a lump-sum award plus monthly alimony was proper where the wife had contributed to the accumulation of the property of her husband. While the evidence supports Kimberlana's claims that she made contributions to the couple's marital assets, unlike *Jenkins*, this is not an instance where the husband had significant assets, leaving the wife destitute. The evidence at trial was that both parties had difficulty making ends meet, both during the marriage and after their separation. Both Robert and Kimberlana acknowledged that Robert's parents had contributed large sums to help the couple make their house payments and travel during their marriage. Davis,

11

Robert's mother, testified that Robert lived with a couple in New Orleans because "he [could not] afford a house," and at other times, he lived with his sister in her home. Any deficit created by the division of the marital assets was not adverse to Kimberlana, but to Robert. Finding the court's decision to deny Kimberlana alimony was not "so oppressive, unjust, or grossly inadequate as to evidence an abuse of discretion," *Rogillo*, 57 So. 2d at 1248 (¶7), this assignment of error is without merit.

**VII. Whether the chancery court erred in modifying the judgment, decreasing the amount of arrearage owed to Kimberlana.**

¶26. In the judgment of divorce, the chancellor found that Robert owed an arrearage of $42,604.47. He further held that Robert failed to pay sums accruing from the order of contempt; so a judgment of $65,895.96 was entered, with an interest rate of 3% annually until paid in full. Robert filed a motion to reconsider the judgment, and the court determined that because Kimberlana had not requested temporary child support in her initial complaint for divorce filed in July 2010, the court did not have the authority to order such and the temporary order was void ab initio. Therefore, the judgment was modified, and the amount of arrearage owed by Robert was decreased to $23,291.49. Kimberlana now claims the court erred in not enforcing the December 27, 2013 order, which awarded her the $42,604.47 in arrearage, and decreasing the amount of arrearage owed.

¶27. "Child support may not be awarded unless it is requested in the pleadings, tried by consent, or the court notifies the parties that the issue will be addressed." Deborah H. Bell, *Bell on Mississippi Family Law* § 19.02[1][b][ii], at 468 (2005). As the chancery court noted in its order, Kimberlana's complaint did not contain any plea for child support or

12

maintenance. In her July 2010 complaint, Kimberlana simply requested that the chancery court grant her a divorce based on irreconcilable differences and additionally stated: "If mistaken in the relief prayed, [she] prays for such further general relief and equitable relief to which she is entitled to receive." Furthermore, the record reflects that Robert was not provided an opportunity to object to the chancellor's award of temporary support, as he was not present at the hearing. A month after the order was entered, Robert filed a motion to set aside the temporary order, claiming that he was not notified of the proceedings. In *Massey v. Huggins*, 799 So. 2d 902, 910-11 (¶¶33-34) (Miss. Ct. App. 2001), we reversed a chancery court's award of child support, as the appellant "was not provided notice that she 'might be required to defend a claim of child support' nor was there a 'suggestion in the record that support payments from [the appellant] were even being contemplated by the court on its own or asked for by' [the appellee]." (Quoting *Morris v. Morris,* 359 So. 2d 1138, 1139 (Miss. 1978); *but cf. Lee v. Stewart*, 724 So. 2d 1093, 1095 (¶4) (Miss. Ct. App. 1998) (Although child support was not requested in the pleadings, the award of child support was affirmed, as the record indicated the father did not object to the issue at trial, "but instead elected to argue on its merits"; thus, "th[e] issue was tried with [his] implied consent.").

¶28. We find no error in the chancery court's findings, as child support was not included in the pleading, and there was no evidence that the issue was tried by consent.

### VIII. Whether the chancellor erred in awarding the trailer from the couple's former snowball business to Kimberlana.

¶29. Kimberlana contends the chancellor erred in awarding her the couple's trailer for their snowball business, which was damaged during Hurricane Katrina, and valuing the trailer at

13

$10,000.[5] At trial, Robert acknowledged that the trailer had been damaged during Hurricane Katrina and estimated it was only worth approximately $1,500. However, the chancellor based the value of $10,000 for the trailer from Kimberlana's own Rule 8.05 statement. Moreover, we are unsure what relief Kimberlana is requesting on appeal; she simply argues that the trailer's value was not $10,000, saying that when she picked it up, it was severely damaged. She has also cited no authority for her claim; therefore, we find this assignment of error is procedurally barred from review.

### IX. Whether the chancellor should have ordered Robert to acquire and maintain life-insurance policies of $500,000 for the children.

¶30. Arguing Robert should have been ordered by the court to maintain two life-insurance policies for his children, Kimberlana again claims that Robert has inherited assets from his deceased father and "stands to inherit another $250,000 from his mother." Despite the fact that she has cited no authority, procedurally barring this issue from appellate review, as we have already noted, there was no evidence presented Robert had any present vested interest in any of his parents' assets. Therefore, we find no merit to this issue.

¶31. Finding no abuse of discretion in the chancery court's findings, we affirm the judgment.

¶32. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

---

[5] Robert notes in his brief that the court incorrectly refers to this asset in the judgment as a *snowmobile*.

14